[No. 15458.    Department Two.—June 23, 1894.]

## EUGENE VALLENS ET AL., APPELLANTS, v. FREDERICK TILLMANN ET AL., RESPONDENTS.

CONTRACT FOR SALE OF CIGARS—SAMPLES—INFERIOR QUALITY—ABROGATION OF CONTRACT—LIABILITY OF PURCHASER.—Where a contract for the sale of cigars specified the brands to be furnished, which were to correspond to samples, and provided for a release from the agreement upon paying a specified sum, or such part thereof as may remain unpaid at the time of so electing to discontinue such purchases, the fact that the sellers had furnished cigars which did not come up to the samples which the purchasers had taken and paid for does not justify the purchasers in abrogating the contract, and in declining to buy goods according to the contract; and if they decline to take any further goods, and notify the sellers that they will receive no more, the sellers have a right to recover the unpaid balance of the sum specified by the contract.

ID.—INSTRUCTIONS—CONTRADICTORY CHARGE—ERRORS NOT CURED.— Where the oral charge of the court was confusing and contradictory, errors in giving instructions asked for by the respondents, and refusing instructions asked for by the appellants which correctly state the law, are not cured by such confusing and contradictory statements.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Edmund Tauszky*, for Appellants.

The contract was not an entire contract, but was in its nature severable and divisible, and the fact that one shipment of cigars did not come up to the sample did

not justify the defendants in refusing to accept subsequent ones that might be equal to sample. (*Guernsey* v. *West Coast Lumber Co.*, 87 Cal. 249; *Veerkamp* v. *Hulburd etc. Co.*, 58 Cal. 229; 41 Am. Rep. 265; *More* v. *Bonnet*, 40 Cal. 251; 6 Am. Rep. 621; *Katz* v. *Bedford*, 77 Cal. 319; 2 Parsons on Contracts, 7th ed., p. 648; *Simpson* v. *Crippen*, L. R. 8 Q. B. 14; *Cahen* v. *Platt*, 69 N. Y. 348; 25 Am. Rep. 203; *Maryland etc. Co.* v. *Lorentz*, 44 Md. 218, 232; *Morgan* v. *McKee*, 77 Pa. St. 228; *Johnson* v. *Allen*, 78 Ala. 387; 56 Am. Rep. 34; *Deming* v. *Kemp*, 4 Sand. 147; *Gill* v. *Benjamin*, 64 Wis. 362; 54 Am. Rep. 619; *Blackburn* v. *Reilly*, 47 N. J. L. 290, 308; 54 Am. Rep. 159.

*Daniel Titus*, for Respondents.

The COURT.— The plaintiffs are manufacturers of cigars at Chicago, the defendants wholesale dealers at San Francisco. Prior to February 4, 1889, defendants had purchased goods from plaintiffs, and differences having arisen between them, a compromise was made through an agreement in writing of that date. In that agreement, among other things, it was stipulated that the plaintiffs claimed to have lost in the settlement $2,983.75, which defendants were willing "to assist in making up to them," and therefore agreed to purchase from plaintiffs 50,000 cigars per month for two years, "or until said party makes up said loss." The contract then proceeds to specify the brands to be furnished, which were to correspond to samples, and it was agreed "that the goods shall be equal in size, shape, and quality to said samples." The profit per thousand upon each brand was fixed in the agreement.

It then states:

"Should said party of the second part (defendants) conclude to go out of business of vending cigars at any time hereafter, or for any other reason, it may be released from its agreement to buy 50,000 cigars per month, by paying to the said party of the first part the

said sum of $2,983.75, or such part thereof as may remain unpaid at the time of so electing to discontinue such purchases."

It is alleged by plaintiffs in their complaint, that since this agreement the defendants have purchased from plaintiffs 180,000 cigars, the profits on which amount only to $380, and that defendants have refused to purchase any more, wherefore plaintiffs demand judgment for the sum of $2,605.75, which is the said sum of $2,983.75 less the said profits.

The answer admits the contract; denies that plaintiffs have performed its conditions; that defendants have failed to perform, or have refused to purchase any more cigars from plaintiffs, or that plaintiffs have been willing to sell cigars in accordance with said agreement.

Defendants aver that they performed the conditions of said contract in good faith until the plaintiffs committed a breach thereof by sending goods inferior in quality to the samples; that the defendants bought 180,000 cigars, but the goods were not like the samples, nor equal in size, shape, or quality; that defendants called plaintiffs' attention to the breach of the contract, and required them to furnish goods of the quality, size, and shape of the samples, which plaintiffs refused to do.

The cause was tried with the aid of a jury, and the verdict and judgment were for defendants. Plaintiffs appeal from the judgment, and from an order refusing a new trial.

Appellants contend that the court erred in admitting certain testimony over their objections; in giving instructions asked for by defendants; in refusing instructions asked for by plaintiffs, and in the instructions given of its own motion. Also that the verdict is against the evidence.

It appears from testimony which is not disputed, that under the contract, defendants continued to take cigars from plaintiffs until July 18, 1889. At that time they had received 160,000, and had paid for 120,000. There

had been no complaint in regard to the goods furnished.
On that day, however, they sent a telegram to plaintiffs,
as follows: "Do not ship any more cigars; will write
particulars." July 29th plaintiffs received at Chicago
a letter from defendants explaining the telegram. They
complained of the cigars sent as not being like the sam-
ples, in quality or shape, and say they had suffered
heavy loss, and add: "Although by rights we should
hold the goods subject to your order, we will keep them
and bear the loss ourselves, rather than have any more
trouble with you, but at the same time positively with-
draw from the contract and terminate it right here, and
will not receive any more cigars from you. Our trans-
actions with you thoroughly satisfy us not to have any
more to do with you whatsoever.

"Our statement as regards the quality of the goods
can be substantiated by any reliable and square dealer
or manufacturer of cigars who understands his business.
Please return contract on receipt of this, and we will
withhold payment of bill of June 25th until we hear
from you."

Two days later Tillmann wrote another letter reiterat-
ing the complaints in regard to the goods, and conclud-
ing: "Under the circumstances, will not receive or
purchase any more goods from you, as I certainly shall
not deal with parties that I cannot trust."

July 27, 1889, plaintiffs replied to the two letters,
asserting that the goods sent were according to con-
tract, but admitting that defendants had a right to retire
from the contract upon paying the sum of $2,983.75,
upon which they admitted defendants were entitled
to a credit of $380. They demanded payment of the
bill acknowledged to be due, and the balance of the
$2,983.75.

August 7th plaintiffs received a reply to this letter
from defendants, in which defendants say that they
wish no further argument in the matter, and that they
hold the goods not paid for subject to plaintiffs' order.

November 29th plaintiffs replied, saying: "If you

have any goods which you claim we did not make in accordance with the contract now existing between us, you can return them to us, and we will make others in place of them.   We firmly insist upon the completion of this contract, and will either furnish the goods to you as specified in said contract, or you may pay us the amount in cash which is due us on the contract."

December 13th defendants replied, taunting the plaintiffs for not having sued, but at the same time consenting to pay for all the cigars they had received, and also to accept 20,000 others which had been stopped *in transitu,* although not up to the contract.   They add: " In withdrawing from the contract which you did not keep we are fully justified, and think that in paying for all the goods that you sent us, at your own price, we are treating you with liberality."

This must be held a refusal to accept more goods, even though they were like the samples.   Respondents' counsel admits here that the fact that plaintiffs had furnished cigars which did not come up to the samples which defendants had taken and paid for, did not justify defendants in abrogating the contract, and in declining to accept goods thereafter, provided plaintiffs would furnish such goods as were called for in the contract; but he contends that plaintiffs should have tendered other goods which did come up to contract standard, and that defendants would have been liable only when they declined to accept and pay for such goods.   He says defendants have never declined to accept and pay for any goods which were in accordance with the contract.

In this, however, defendants' counsel is clearly in error.   The correspondence above quoted shows that defendants declined to take any goods from plaintiffs, and notified them that they would receive no more. There were no conditions in this notice.   Besides, there were a number of brands, and defendants had the privilege of ordering any of them, and in the absence of such orders plaintiffs could not furnish the goods.   The evi-

dence shows that none were ordered. Furthermore, plaintiffs did offer to furnish other goods, and the defendants declined to receive them.

And yet, further, under the contract defendants had the right to discontinue taking the goods upon paying the $2,983.75. Plaintiffs therefore could not force them to accept and pay for goods even if they had corresponded with the samples. Their remedy was to bring suit, as they have done, for the balance of the $2,983.75.

The evidence was not conflicting upon any material point, but the court instructed the jury, at request of the defendants, as follows:

"If you should find from the testimony that the cigars furnished by the plaintiffs were not of the size, shape, and quality of the samples left by them with the defendants, then the defendants were not bound to continue buying cigars of plaintiffs, nor were they bound to pay the amount sued for, nor any part thereof, and your verdict should be for the defendants."

The court also refused to instruct the jury at the request of plaintiffs, in accordance with the views of the law which are now admitted to be correct.

This was, of course, error. In fact, as the evidence was not conflicting, or the inference from it doubtful, the court should, if requested, have instructed the jury to find for plaintiffs.

The court also gave further instructions of its own motion, and at the request of the jury. These instructions are not excepted to in such way that they can be reviewed here, but may be referred to for the purpose of determining if the errors above alluded to were there corrected.

If a different view of the law had been there laid down, it would only have been in conflict with the instruction given at the request of defendants. But, referring to it, we find that the jury were then told: "I think it was an entire contract; that is to say, it was a contract with plaintiffs to purchase cigars. If any portion of them were not up to sample, my instruction to

you is that it is a defense, and that defendants need not take them or pay for them."

In the oral charge this idea is repeated again and again. There was no question as to whether defendants should take and pay for any cigars which had been furnished. They had all been paid for. The instruction could have had no bearing upon any other question than whether the defendants had a right to abrogate the contract because the cigars furnished, and which had been paid for, were not like the samples. It is now admitted that they had no such right.

It is true some portions of the oral charge seem to favor the present contention of the appellants, but the errors in giving the instructions asked for by defendants, and refusing the instructions asked for by plaintiffs, which correctly stated the law, are not cured by these confusing and contradictory statements.

It is not necessary to consider other alleged errors.

The order and judgment are reversed.