[L. A. No. 2692.    Department One.—June 19, 1911.]

## BOBRICK CHEMICAL COMPANY (a Corporation), Appellant, v. PREST-O-LITE COMPANY (a Corporation), Respondent.

SALE—ARTICLES MANUFACTURED FOR PARTICULAR PURPOSE—WARRANTY OF FITNESS.—Under section 1770 of the Civil Code, one who manufactures an article under an order for a particular purpose warrants by the sale that it is reasonably fit for that purpose.

ID.—BREACH OF WARRANTY OF FITNESS—VENDEE MAY REFUSE TO PERFORM PRIOR TO DELIVERY BY VENDOR.—Under an agreement for the purchase during a term of years of a specified number of machines for the inflation of tires to be manufactured by the vendor, and which were designed to accomplish a particular purpose, the parties contract upon the theory that the articles so constructed would be reasonably fit to accomplish that purpose; and if it becomes apparent, after the vendee has accepted and paid for a portion of the machines, that they cannot accomplish such purpose by reason of some inherent defect in the plan or device according to which they

CLX Cal.—14

are to be made, the vendee may refuse in advance to go on with the contract, instead of waiting until the vendor has manufactured and offered for delivery the machines still to be furnished and then refusing to accept the same.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, for Appellant.

Woodruff & McClure, for Respondent.

ANGELLOTTI, J.—This action was instituted by plaintiff corporation, which is the assignee of G. A. Bobrick of a contract for a term of three years under which Bobrick agreed to furnish defendant, an Indiana corporation, eleven thousand sets of parts of tire-inflating apparatus (each set consisting of one valve, one coil, and one bushing), for a specified price per set, the defendant agreeing to order and pay for five thousand of said sets during the first year of the term, and three thousand of said sets during each of the second and third years of the term. The contract was dated December 6, 1906. By a provision contained therein, defendant at once ordered three thousand of said sets, at the scheduled price of $4.45 per set. On June 4, 1907, it notified both Bobrick and plaintiff that it canceled this agreement, and would not receive any more goods thereunder. It had then received 1137 of the three thousand sets ordered, which it retained and paid for. This action was brought to recover $8290.35 for the remaining 1863 sets of the three thousand sets ordered, which defendant refused to receive or pay for, and $23,600.00 loss of profits on the remaining eight thousand sets, caused by defendant's refusal to go on with the contract, making an aggregate of $31,890.35. Judgment went for defendant, and we have here an appeal by plaintiff from such judgment.

The appliances referred to in this agreement were the result of an invention of Mr. Bobrick, constituting, according to his claim, a great improvement in the appliances then in use for the inflation of tires, and one that could be manu-

factured and sold for considerably less than a device which defendant was then using, under a contract with the United States Liquid Air & Oxygen Company, a California corporation, which contract was dated February 21, 1906. The appliances were to be manufactured by him, or under his order, and delivered by him ready for use to defendant. The contract between the defendant and the United States Liquid Air & Oxygen Company was also for the term of three years. The last-named contract granted to defendant the exclusive right to sell the tire-inflating devices manufactured by the United States Liquid Air & Oxygen Company, which will hereafter be designated herein as the Air & Oxygen Company, in all of the states and territories of the United States except nine. Under paragraph XII of its contract with the Air & Oxygen Company defendant was obligated to order and pay for each year at least one thousand of the devices described therein, and, further, not to order such devices, or any part thereof, from any other source than the Air & Oxygen Company.

There was evidence sufficient to sustain conclusions that the devices covered by Bobrick's later contract with defendant involved some features that were the product of an earlier invention by him which he had conveyed to the Air & Oxygen Company; that these features were contained in the devices covered by the contract of the Air & Oxygen Company with defendant; that this contract was defendant's sole authority for the sale of any device containing such features, and that it was therefore essential to defendant's being able to sell the device covered by the Bobrick contract that the Air & Oxygen Company contract should remain in force. It was also important that said contract should remain in force to protect it from competition in the sale of such devices as were covered thereby. At the same time, it is clear that defendant considered it absolutely necessary that it should be relieved from the burden imposed by paragraph XII of that contract, if it was to assume the burden proposed to be created by the Bobrick contract. Bobrick was, at the time of the negotiations preceding the execution of his contract and at the time of such execution, a director and vice-president and mechanical engineer of the Air & Oxygen Company, and had been sent east from

California by such company on its business, and, among other things, to confer with defendant company and endeavor to settle certain difficulties that had arisen in regard to the contract of February 21, 1906. Although there is some conflict on the point, the evidence was certainly sufficient to support the conclusion that defendant insisted that the contract proposed by Bobrick could not be entered into by it unless the Air & Oxygen Company contract was modified by the elimination of paragraph XII thereof, and, as so modified, continued in force, and would enter into the new contract only on such understanding. The evidence was also legally sufficient to support the finding of the trial court that Bobrick, for the purpose of inducing the execution of the contract, represented to defendant that he, as an officer and one of the principal owners of the stock of the Air & Oxygen Company, could and did, to a large extent, control said company, and as such officer, etc., orally promised and agreed with defendant that if defendant would enter into said agreement with him, for the purchase and sale of his device for inflating tires, he would cancel or cause to be canceled and eliminated from the Air & Oxygen Company contract paragraph XII, and that said agreement with the exception of paragraph XII should remain and continue in full force, and that the elimination of paragraph XII of said contract would be a part of the consideration for entering into the new agreement with him. The written agreement between Bobrick and defendant contained no reference to this matter.

The evidence was also ample to support the conclusion that defendant relied on such assurances, and would not have entered into the Bobrick agreement except therefor.

Bobrick endeavored to obtain this modification of the Air & Oxygen Company contract, but the directors of that company at first refused to grant the same, with the result that, defendant refusing to comply with the provision thereof requiring it to order and pay for at least one thousand of the devices referred to therein, on April 24, 1907, a resolution was adopted by said directors annulling such contract and directing formal notice of such annulment to be sent to defendant. Such notice was given to defendant, whereupon defendant, on May 28, 1907, notified Bobrick thereof by

telegram, further notifying him that unless the contract was at once renewed with paragraph XII eliminated, it would cancel its contract with him, inasmuch as it was advised that it could not sell the Bobrick device without infringing the patents owned by the Air & Oxygen Company. On May 29, 1907, it again telegraphed him, that not having received any answer, it canceled its contract with him, and again, on June 4, 1907, it gave notice to both him and plaintiff, to the same effect. On June 12, 1907, the directors of the Air & Oxygen Company reconsidered the matter and unanimously voted to reinstate its contract with defendant, with paragraph XII eliminated, and notified defendant thereof, and defendant at once notified the Air & Oxygen Company that it had already accepted such annulment as final and acted thereon; that it would adhere to such position and was now entirely out of the "tire tank business."

The trial court further found, in accord with allegations contained in defendant's pleadings, that the device to be furnished by Bobrick under his contract, failed to do and perform the work it was sold to do and perform, that it was defective, and would not cause the liquid gas contained in the tanks to enter the tire in a gaseous condition, but the same would freeze up, so that said liquid contained in the tanks would not enter the tire in a gaseous condition, and that the valves in said device were also defective, and would leak after using the same a few times by the operator.

It appears to be conceded that it was necessary, in order to render the device reasonably fit for the particular purposes contemplated by all parties, that the liquid gas should be wholly changed into gas while passing through the appliance and should enter the tire to be inflated solely in the form of gas. While it is true that from the time of the very first delivery by Bobrick under his contract to the time of the attempted rescission there were many complaints by defendant in regard to the working of the appliances furnished, the evidence indicates that defendant did not know until after its cancellation of the contract how unsatisfactory they proved to be to those purchasing from it. It was in evidence on behalf of defendant that at the time of the trial it still had on hand, including those that had been returned as unsatisfactory, over nine hundred of the eleven

hundred odd sets that had been delivered by Bobrick. We must accept the finding of the trial court as a conclusion by it that there was some defect in the device itself, as invented, perfected, and constructed by Bobrick up to that time, that prevented it being reasonably fit for the particular purpose intended, rather than a conclusion that the particular sets furnished were not constructed in accord with the device invented. While Mr. Bobrick earnestly insisted that there was no basis for any such claim, we are of the opinion that it must be held that the evidence on this point was of such a nature that we cannot say, as matter of law, that the finding of the trial court is without sufficient support.

Taking up the finding last discussed, we are of the opinion that it furnished sufficient basis for a judgment for defendant in this action to recover damages for refusal on its part to take any further sets under the contract of December 6, 1906. Aside from its claim that this finding is not sufficiently sustained by the evidence, a claim that we have concluded cannot be maintained, the only point made by plaintiff is that, if the sets offered were defective, the only remedy of defendant was to refuse to accept them and insist upon the delivery of sets complying in all respects with the contract, and that it could not, while accepting and paying for a portion of the goods, base a refusal to accept further goods upon defects in those already accepted. This contention is supported by the authorities in so far as a mere failure of the vendor to deliver articles of the quality and character stipulated for is concerned. (See *Guernsey* v. *West Coast Lumber Co.*, 87 Cal. 249, [25 Pac. 414]; *Vallens* v. *Tillman*, 103 Cal. 191, [37 Pac. 213].) In the first of the cases just cited, the contract was for the sale and purchase of lumber, and the complaint was that the lumber delivered was cut "too thin," and in the other case the claim was that cigars delivered under a contract for the sale and purchase of cigars did not come up to the sample that had been furnished and constituted a part of the contract. But, as we have seen, the finding here implies a material defect in the device itself, as distinguished from a failure of the articles manufactured and furnished to accord with the device as invented and constructed by Mr. Bobrick. The sets furnished were manufactured in accord with the device and

plan of Bobrick, but although so manufactured were not reasonably fit for the particular purpose intended. The device itself had not been sufficiently perfected to accomplish the purposes intended and contemplated by both parties, and any set of appliances to be furnished in the future which was in accord with such device would not be reasonably fit for the purpose intended. We think that the facts of this case were such as to make section 1770 of the Civil Code applicable. That section provides that "one who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." The articles to be manufactured in accord with his invention and delivered by Bobrick to defendant were designed to accomplish a particular purpose, and the parties contracted upon the theory that articles so constructed would be reasonably fit to accomplish that purpose. If it is made apparent that the articles to be furnished by the vendor cannot come up to this standard, by reason of some defect in the plan or device according to which they are to be made, which we must assume to be the case here in view of the finding referred to, no reason is apparent why the vendee may not refuse in advance to go on with the contract, instead of waiting until plaintiff has manufactured and offered for delivery the sets still to be furnished, and then refusing to accept the same. The latter course would hardly be consonant with fair dealing where it is apparent that goods to be manufactured by the vendor at great expense would be unsatisfactory to an extent warranting and in fact compelling their rejection when offered.

It follows that the conclusion of the trial court upon this question furnishes sufficient basis for the judgment in favor of defendant.

The finding in regard to the parol understanding as to the elimination of paragraph XII of the Air & Oxygen Company contract, which is also sufficiently sustained by the evidence, presents a case in which it would appear exceedingly unfair to require defendant to proceed with the Bobrick contract unless the Air & Oxygen Company contract was modified in the respect stated, and as so modified continued in force. No such modification was made prior to defendant's cancellation of the contract. There is, however, some question whether

such parol understanding could avail defendant in view of the fact that it was in no way a part of the written contract between Bobrick and defendant, and the doubt whether the statements of Bobrick found by the court to have been made constituted such false representations as may be the basis for a rescission. It is unnecessary to decide this question in view of our conclusion upon the effect of the finding already discussed, and it is likewise unnecessary to consider the question whether, in view of the finding as to the matter of the elimination of said paragraph XII, the Bobrick agreement was void as to defendant as against public policy because of the relationship of Bobrick to the Air & Oxygen Company.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank the court in Bank filed the following opinion on July 17, 1911:

THE COURT.—The decision in this case was placed by the opinion solely on the ground that the device to be furnished by Bobrick under his contract failed to do and perform the work it was sold to do and perform, etc. Upon this point we see no reason for receding from the views set forth in the opinion. The opinion is erroneous in stating that there was evidence sufficient to sustain the conclusion that the devices covered by Bobrick's contract with defendant involved some features that were contained in the devices covered by the contract of the Air & Oxygen Company with defendant, and that the latter contract was defendant's sole authority for the sale of any device containing such features. In view of the sole ground upon which the decision is based this error is not material, and does not warrant a rehearing.

The petition for a rehearing is denied.