92   455;
134   156

STATE OF IOWA v. E. A. WALTON, Appellant.

**Practice: Misconduct of Jury.** A jury was, while deliberating on a murder case, allowed to read local newspapers setting out abstracts of testimony received at the trial, containing inflammatory criticism on the failure of courts to bring criminals to justice, and fulsome eulogies of arguments for the state. One juror separated and talked with his wife about the feeling of the community. *Held*, a new trial should have been granted.

SAME: COUNTY ATTORNEY. After jurors had expressed indignation because defendant objected to their separation, his counsel consented to separation, but privately obtained an order to keep the jury together. The county attorney then told the jury that *he* was willing they should separate; and separation was allowed. *Held*, not misconduct.

**Dying declarations** are admissible though they consist of writing and of verbal statements, made at different times.

*Appeal from  Wapello  District  Court.*—HON.  W.  I. BABB, Judge.

WEDNESDAY, DECEMBER 12, 1894.

THE defendant was indicted, tried, and convicted for murder in the second degree, and he appeals.—*Reversed.*

*B. W. Scott* and *J. C. Mitchell* for appellant.

*John Y. Stone,* attorney general, and *Sumner Siberell,* county attorney, for the state.

ROTHROCK, J.—The indictment charged that the defendant caused the death of a pregnant female named Melinda A. Cook, by the use of an instrument which he thrust into her womb with intent to produce a miscarriage. No question is made as to the form of the indictment. It contains the necessary averments to constitute murder in the second degree.

When the defendant was put upon trial, his counsel requested that the jury be kept together during the adjournments of court. The order was made. At the first adjournment, a number of the members of the jury approached counsel for defendant in the court room, and expressed themselves as being very indignant at them for making the request, and thereupon the counsel consented that the jury might separate. On the next day, and while the trial was in progress, a man charged with the crime of rape was hung by a mob in one of the public streets of the city of Ottumwa, and not far distant from the court-house. The great excitement produced by the hanging in the street attracted attention in the court room, and a recess of five minutes was taken, and most of the jury went to the place where the lynching occurred. It is proper to say that, when the recess was ordered, the trial judge did not know the cause of the tumult, nor that a man was about to be lynched by a mob. After this, and on the next day, counsel for defendant renewed the application for an order to keep the jury

together. This motion was not made publicly in open court, but was made to the judge in writing, with the request that the jury should not be permitted to know on whose request the order was made. Thereupon the court made the order, and the county attorney at once informed the court that he was willing that they should be permitted to separate. Some of the members of the jury again entered their protest, and accused the defendant's counsel of being the cause of the court's order, and were indignant at not being permitted to separate; and counsel for the defendant waived the order, and the jury were permitted to separate during the adjournments of court, until they retired for deliberation. It is urged in behalf of the defendant that the county attorney was guilty of such misconduct in connection with the order as to entitle the defendant to a new trial. The position of counsel does not appear to us to be well taken. The order was a matter within the discretion of the court. *State v. Gillick*, 10 Iowa, 98; *State v. Rainsbarger*, 74 Iowa, 196 and 539, 37 N. W. Rep. 153; Code, section 4434. It was the right of the county attorney to decline to join the request for an order.

II. A new trial was asked upon the ground of the misconduct of the jury after they retired for deliberation. It appears that the jury was charged by the court, and a bailiff sworn and put in charge of them, on Friday. They deliberated until the next Monday morning, and then returned a verdict of guilty. There were three daily newspapers published in the city of Ottumwa. Each issue of these papers was taken into the jury room, and read by some of the members of the jury. Sixty-five pages of the abstract consists of extracts from these papers. It appears therefrom that a great state of excitement at that time existed in the city of Ottumwa. Numerous high crimes had recently before that been committed there

and in that vicinity. The said newspapers were full of criticisms and complaints of the proceedings of the courts in failing to bring criminals to justice. There were what appeared to be full reports of the evidence taken upon the trial of the defendant, and the addresses of the counsel to the jury, with fulsome commendation of the arguments of counsel for the state.

It further appears that one of the jury twice absented himself from the jury room, and had conversations with his wife, in which the case under consideration, and public feeling concerning it, were discussed. There is no denial of the fact that all these newspapers were carried into the jury room, and read by some, if not all, of the jurors. It is provided by section 4452 of the Code that "upon retiring for deliberation the jury may take with it all papers which have been received as evidence in the case except depositions and copies of such parts of public records or private documents as ought not in the opinion of the court to be taken from the person having them in possession;" and section 4453 is as follows: "The jury may also take with them notes of the testimony or other proceedings on the trial taken by them *but none taken by any other person.*" It does not appear whether the bailiff in charge of the jury voluntarily took the newspapers into the jury room, or whether it was the act of the jury; but this is wholly immaterial. It was none the less a clear case of prejudicial misconduct. The above provisions of the law can not be disregarded. The newspaper articles were made up from notes, either in shorthand or otherwise, taken by persons other than the jurors, and, although put into print, their introduction into the jury room was in plain violation of the law. The misconduct would be no more flagrant if the jury had taken the notes from the hands of the persons who made them, and at the time the jury retired to consider their verdict. It is true that slight

and immaterial departures from the above provisions of the Code have in numerous cases been held to be such misconduct as would not vitiate a verdict, where it is made to appear that no prejudice resulted therefrom. But we discover no such grounds in this record for sustaining the verdict. The whole case impresses us that this jury assumed to be a law unto themselves. We have set out the conduct of some of them relating to the order of separation during the trial, as showing that they meddled and interfered with the order of the court in a very reprehensible and unseemly manner. The court made the order upon what was thought to be sufficient grounds, and that should have been an end of the question as to the propriety of the order.

III. Other complaints are made of the rulings of the court during the trial. An examination of the whole record satisfies us that these objections are not well taken. The instructions to the jury fairly presented every question in the case. The principal objection relates to the admission in evidence of certain dying declarations of the deceased. There was a written declaration and verbal declarations made at different times. They were all admissible. "The prosecutor in a murder case can not be confined to proving dying declarations made at one time, if there were others made at other times. All are competent. Nor can he be confined to proving what was said at one time, when the statement was reduced to writing and signed at another." 6 Am. and Eng. Encyclopedia of Law, 131; *People v. Simpson*, 48 Mich. 474, 12 N. W. Rep. 662.

IV. The claim made, that the evidence showing the condition of mind of the deceased when part of the declarations were made was insufficient because it did not establish the fact that she was then under a sense of impending death, can not be sustained. An examination of the evidence on this question satisfies us that

it was sufficient. We need not set out the evidence. It satisfactorily appears therefrom that the deceased, at the time, believed that she must soon die from the effects of the operation which had been performed upon her. Our conclusion is that a new trial should have been allowed on the ground of the misconduct of the jury. REVERSED.