(90 South. 687)

**LEITH v. STATE. (6 Div. 455.)**

(Supreme Court of Alabama. June 30, 1921. Rehearing Denied Oct. 13, 1921.)

**1. Jury ⊕⟶109—Action of court in excusing jurors of its own motion for bias held not to defeat defendant's right of trial by jury.**

The defendant's right of trial by jury was not defeated by the action of the trial court in excusing of its own motion jurors who declared in unequivocal terms that they had fixed opinions, and could not weigh the testimony without being biased, even though both the defendant and the state waived the challenge for cause.

**2. Jury ⊕⟶10—The right of trial by jury may be regulated by Legislature, but not so as to impair fundamental requisites of a jury.**

The right of trial by jury may be regulated by the Legislature, but not so as to impair any of the fundamental requisites of the jury.

**3. Criminal law ⊕⟶925(1), 968(12)—Jurors' consideration of extrinsic fact during deliberation properly presented by motion for a new trial rather than by motion in arrest.**

Jurors' consideration of a prejudicial extrinsic fact during deliberation was properly presented for the consideration of the trial court by a motion for a new trial rather than by a motion in arrest of judgment.

**4. Criminal law ⊕⟶957(5)—Affidavits of jurors competent to show consideration of extrinsic fact during deliberations.**

On motion for new trial on the ground of the jurors' consideration, during deliberations, of the written opinion of the court on the defendant's application for habeas corpus, it was competent to show by the affidavits of jurors and others that such extrinsic fact or matter came to the attention of a part of the jury during its deliberation.

**5. Criminal law ⊕⟶855(8) — Jury should be separated from world from beginning of trial until rendition of verdict.**

Generally the jury in a criminal case should be entirely separated from the world, and no outside communication should be permitted from the beginning of the trial until the verdict is rendered.

**6. Criminal law ⊕⟶855(8) — Communications between a juror and a witness or a party at interest prohibited.**

Generally in a criminal case communications between a juror and a witness or a party at interest should be prohibited.

**7. Criminal law ⊕⟶855(8)—Improper conversation of juror with counsel prohibited.**

Generally in a criminal case improper conversations between a juror and counsel should be prohibited.

**8. Criminal law ⊕⟶864—No communication between judge and jury after cause has been committed admissible unless in open court, and in presence of counsel if practicable.**

Generally in a criminal case no communication should take place between the judge and jury after the cause has been committed to jury, unless in open court, and, if practicable, in the presence of counsel.

**9. Criminal law ⊕⟶855(7)—No improper communications between jurors and court officers during deliberations of jury.**

Generally in a criminal case there should be no improper communications between jurors and court officers during deliberations of jury.

**10. Criminal law ⊕⟶857(1), 858(3) — Jury should not consider evidence outside of that produced at trial, nor take out and consult documents.**

Generally in a criminal case the jury should not consider evidence outside of that produced at the trial, or take out and consult records, documents, or depositions not submitted as evidence on the trial, and which may influence their verdict.

---

⊕⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Criminal law ⬅⬆855(5)—Jurors should not read newspapers containing editorials or statements of fact pertaining to the trial calculated to affect verdict.**

Jurors should not be permitted, while in the discharge of their duty, to read newspapers containing editorials or statements of fact pertaining to the trial calculated to affect the verdict.

**12. Criminal law ⬅⬆956(12)—Movant for new trial on ground of jury's consideration of extraneous fact had burden of showing injury.**

On motion for new trial on the ground of the consideration by jurors during deliberations of the opinion of the court in the defendant's habeas corpus proceeding, where the prosecution and the defense were innocent of placing the opinion before the jury, the burden was on the movant to show that harm was done him.

**13. Criminal law ⬅⬆957(5)—Jurors' consideration of opinion of court on application for habeas corpus held not to have influenced verdict.**

On motion for new trial on ground that jurors considered opinion of court denying defendant a writ of habeas corpus in deliberating as to a verdict, affidavits of jurors that they had determined that the defendant was guilty before they had found the opinion of the court in the habeas corpus proceeding *held* to show jury not to have been influenced by such opinion, in view of the fact that the punishment was fixed at the lowest punishment prescribed for the degree of the crime of which defendant was found guilty.

Thomas, Gardner, and Miller, JJ., dissenting.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Byron Leith was convicted of murder in the first degree, sentenced to life imprisonment, and he appealed. Affirmed.

After setting forth the affidavits filed in connection with the motion for new trial, both for the defendant and for the state, together with the opinion of Judge Sowell on the habeas corpus proceedings of Byron Leith, and setting out specifically the objections interposed thereto, both by the state and the defendant, the opinion of Judge J. J. Curtis, directed to be set out, is as follows:

On consideration of all the affidavits on behalf of the movant and the state, the court is of the opinion that the opinion of Judge Sowell complained of went into the hands of the jury without the consent or knowledge of the prosecution or defense, and that the rule in granting motions for new trials, that, where the misconduct of the prevailing party causes any improper matter to get before the jury, that same will be set aside, without regard to the merits, cannot prevail. But the prosecution and defense being innocent of placing the paper before the jury, or it inadvertently getting before them, the burden will rest on the movant to show that harm was done him.

The court is not passing on whether the paper itself was one calculated to prejudice the jury. The decision undoubtedly states the law, against which defendant could not complain, but that part of the decision which says on the evidence before the court he was not ready to say he would disturb a verdict might mislead a jury; however, no opinion is expressed by the judge as to the defendant's guilt.

The defendant, by the introduction of the affidavits and order of Judge Sowell, seeks to raise by presumption that injury was done, because the court would be authorized to presume that the jury read it, and, if such paper as would injure the defendant, that he was thereby injured, and with this the movant rests his case on the motion. The defendant thereupon introduces the affidavit of 11 of the 12 jurymen, who state that before they found this paper they had agreed on the guilt of the defendant, and determined him guilty of murder in the first degree; that they went to supper, and after they came back they found the decision of Judge Sowell, and then fixed the punishment. Inasmuch as the punishment was fixed at the lowest punishment for that degree of the crime, then no injury could have resulted if the jurors so testifying tell the truth. In rebuttal of these affidavits, the defendant files one from Geo. H. Meyer, which contradicts what he says in the affidavit filed from him by the state, and filed one from Arthur Lawson, a juror, which the state does not file one from. On this question the great preponderance of the testimony is that the jury first determined that the defendant was guilty of murder in the first degree, and afterwards they found the decision of Judge Sowell. On this the court finds that there was no injury done the defendant by said paper being before the jury. In considering these affidavits, the court has tried to follow the rule of law in this state that the affidavit of jurors as to what occurred before them cannot be considered to impeach their verdict. Continental Casualty Co. v. Ogburn, 186 Ala. 398, at page 403, 64 South. 619; Birmingham Ry., Light & P. Co. v. Moore, 148 Ala. 115, at pages 130, 131, 42 South. 1024; Clay v. City Council of Montgomery, 102 Ala. 297, 14 South. 646; City of Eufaula v. Speight, 121 Ala. 613, 25 South. 1009. Finney v. Newson, 203 Ala. 191, 82 South. 441; Hall's Case, 134 Ala. 90, 32 South. 750. But when a verdict of the jury is sought to be impeached, the affidavits of the jurors as to what occurred, especially as to extrinsic matters, are admissible to uphold the verdict, and the court must consider them. Birmingham R., L. & P. Co. v. Moore, 148 Ala. 115–131, 42 South. 1024; Birmingham Ry., L. & Power Co. v. Clemens, 142 Ala. 160, 37 South. 925; Clay v. City Council, Montgomery, 102 Ala. 297, 14 South. 646; City of Eufaula v. Speight, 121 Ala. 613, 25 South. 1009; Cobb v. Hand, 12 Ala. App. 461, 68 South. 541; Birmingham Ry., L. & Power Co. v. Mason, 144 Ala. 387, 39 South. 590, 6 Ann. Cas. 929; L. & N. R. R. v. Sides, 129 Ala. 399, 29 South. 798. Competent to show by jury that they did not read a paper that was before them improperly. L. & N. R. R. Co. v. Sides, 129 Ala. 399, 29 South. 798; Kates Transfer Co. v. Klassen, 6 Ala. App. 301, 59 South. 355; Caldwell v. State, 203 Ala. 412, 84 South. 272; Birmingham Ry.,

L. & P. Co. v. Moore, 148 Ala. 115, 129–131, 42 South. 1024.

What a juror thought, or why he agreed to a verdict, is not permissible to impeach the verdict. Van Tinder v. B. R., L. & P. Co., 202 Ala. 474, 80 South. 858; Harper v. State, 16 Ala. App. 153, 75 South. 829; City of Eufaula v. Speight, 121 Ala. 613, 25 South. 1009.

From the foregoing it results that it is the order and judgment of the court that motion for a new trial by the defendant be and the same is hereby overruled.

The defendant duly excepted to such ruling. The other facts sufficiently appear.

M. L. Leith, Bankhead & Bankhead, Ray & Cooner, and L. D. Gray, all of Jasper, for appellant.

It is impossible, on the evidence in this case, that Judge Sowell's opinion in habeas corpus case could have come innocently into the hands of the jury, and no one can assert with any degree of certainty that it did not influence the jury. It was an error that ought to work a reversal of the case. 12 Enc. P. & P. 602; 14 Hun (N. Y.) 448; 24 Wend. (N. Y.) 185; 125 Mass. 367; 8 Barb. (N. Y.) 46; 26 Wis. 248, 7 Am. Rep. 69; 16 R. C. L. 302; 103 Cal. 193, 37 Pac. 207, 42 Am. St. Rep. 102; 169 Ala. 548, 53 South. 803; 183 Ala. 398, 62 South. 885.

Counsel discuss the insistence of error with rulings on the evidence and refused charges, but, in view of the opinion, it is not deemed necessary to here set them out. In the briefs reaching the Reporter, counsel do not discuss the challenge to the jurors.

Harwell G. Davis, Atty. Gen., and J. M. Pennington and Ernest Lacy, both of Jasper, for the State.

Counsel rely upon the authorities set out in the opinion of Judge Curtis denying the motion for a new trial, and refer to it as their brief in the case. They also discuss, with citation of authorities, rulings on the evidence and refused charges, but, in view of the opinion, they are not here set out.

THOMAS, J. Defendant was convicted of murder in the first degree, and his punishment fixed by the jury at imprisonment for life.

The bill of exceptions disclosed that on the trial a juror, Mr. Castleberry, was asked by the court if he had a fixed opinion as to the guilt or innocence of the defendant, and answered in the affirmative, and, being asked, "Is it so fixed that it would not be removed after you heard the testimony?" answered, "Yes, sir." The court announced that the juror was subject to challenge for cause. The solicitor said the state would waive the challenge. The defendant's attorney stated that the defendant would waive the challenge. Thereupon the court, of its own motion, excused the juror, and requested him to stand aside, and the defendant duly excepted. The same preliminary question to and answer by the juror Mr. Farris were given:

"The Court: Is your opinion so fixed that you could not weigh the testimony without being biased? [The answer was in the affirmative.]

"Q. You do not think the testimony could be received and weighed by you without being biased? A. No, sir.

"Q. You state that you do have a fixed opinion as to the defendant's guilt or innocence? A. Yes, sir."

The court announced that the juror was subject to challenge for cause; the state and the defendant waived the challenge; the juror was excused by the court, and defendant "duly excepted to the court's action in excusing said juror and refused to allow the name of said juror to be placed on the list of the qualified jurors from which the jury trying this case was selected."

The jury system, as a time-honored institution of the common law, and under the Constitutions and the statutes, is dependent upon a fair trial by jurors without bias or prejudice for or against either party litigant or the state or the defendant. Our statutes have been enacted to safeguard this right which can only be secured by unbiased jurors. Sovereign Camp v. Ward, 196 Ala. 327, 71 South. 404; Calhoun County v. Watson, 152 Ala. 554, 44 South. 702; L. & N. R. R. Co. v. Young, 168 Ala. 551, 53 South. 213; Stennett v. City of Bessemer, 154 Ala. 637, 45 South. 890. And it has been often held by this court that the right of neither party to a jury free from bias or interest is lost, or subjected to chance or peril, because a struck jury is demanded. L. & N. R. R. Co. v. Young, supra; Dothard v. Denson, 72 Ala. 541; Morris v. McClellan, 169 Ala. 90, 53 South. 155; Steed v. Knowles, 97 Ala. 573, 578, 12 South. 75; Davis v. Hunter, 7 Ala. 135.

The case of L. & N. R. R. Co. v. Young, supra, contains the statement:

" 'The statute prescribing the cases for which a person, drawn and proposed as a juror, may be challenged, was not intended to take away from the court the discretionary power to excuse any person who appears to the court to be unfit to serve on the jury,' though this power 'should be exercised consistently with the right of the accused to have a jury selected from the list served on him, as far as practicable. There must be a cause.' Long v. State, 86 Ala. 36, 40, 5 South. 443; Scott v. State, 133 Ala. 112, 115, 32 South. 623; Williams v. State, 144 Ala. 14, 17, 40 South. 405. The Long Case and the Scott Case are based upon general principles, while the Williams Case rests upon section 5020 of the Code of 1896.

"Section 7280 of the Code of 1907 authorizes the court to excuse from service any person 'if he is disqualified or exempt, or for any other

reasonable cause, to be determined by the court.' It is true that this section appears in the Criminal Code, but it has been applied by this court in civil cases. Calhoun County v. Watson, 152 Ala. 554, 560, 44 South. 702, 704."

See, also; Code, § 7279; White v. State, 201 Ala. 37, 78 South. 449; Zininam v. State, 186 Ala. 9, 13, 65 South. 56; Nail v. State, 12 Ala. App. 64, 67 South. 752.

So, also, in Morris v. McClellan, supra, the observation is made:

" 'The law, common and statutory, is careful to exclude from the jury box a juror who has, in any degree, prejudged the issue he is to try; or who is under any bias, or want of impartiality, which would prevent him from hearing, trying, and determining fairly.' If a juror has acted in a previous case, whether the parties are identical or not, but which involved the controverted facts in the present case, whether there was a verdict or a mistrial, he cannot be considered an impartial juror upon the consideration of the same facts in a succeeding trial and should be excluded, notwithstanding these facts did not give a special statutory ground of challenging. 'The impartiality of the jury box, the purity of the administration of justice, would require it.' Smith v. State, 55 Ala. 1; Wickard v. State, 109 Ala. 45, 19 South. 491; Carr v. State, 104 Ala. 4, 16 South. 150."

In Williams v. State, 144 Ala. 14, 40 South. 405, the trial was for murder, and it was held that the court was authorized, for good and sufficient reason stated, to excuse a juror who had been regularly drawn and summoned for the week in which defendant's case was set for trial, and before the case was called. In Scott v. State, 133 Ala. 112, 32 South. 623, it is said:

"The state certainly has *no interest* and the defendant has *no right* to introduce into the jury box unfit persons. It is the duty of the court to guard against their introduction." (Italics ours.)

The case of Long v. State, 86 Ala. 36, 5 South. 443, is rested on Carson v. State, 50 Ala. 134, where the juror stated that he believed the defendant guilty from what he had heard, but, if the evidence should show the defendant to be innocent, that his belief would not bias his verdict and he would do what was right; held not to have a fixed opinion, which would bias his verdict. On Bales v. State, 63 Ala. 30, where the answer of the juror showed that his opinion was formed on the hypothesis of the truth of the facts heard, which was susceptible of contradiction by the true facts; that he had not a fixed opinion. And on Jackson v. State, 77 Ala. 18, where the juror stated that he had a fixed opinion as to the guilt of the defendant, which would bias his opinion, if the facts proved were as he had heard them; but, if the facts proved different from what he had heard, that he would not be biased, but would act on the facts as proved. The rule announced was that—

"When * * * such previous opinion is so fixed that it will bias the verdict on the rumored facts being proved, the juror is not free to impartially consider and weigh the evidence pro and con, or to make an unbiased application of the law, as pronounced by the court, to the facts, if proved as heard. A juror, having such fixed opinion, is not the impartial juror guaranteed by the Constitution." Long v. State, supra, 86 Ala. 41, 5 South. 443; Jackson v. State, supra, 77 Ala. 23, 24.

Otherwise given early statement by Mr. Justice Marshall in 1 Burr's Trial, p. 416:

"Light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him."

See Reynolds v. U. S., 98 U. S. 145, 155, 25 L. Ed. 244; Holt v. U. S., 218 U. S. 245, 248, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

[1] Defendant's right of trial by jury was not defeated by the finding and action of the trial court. The partiality of Jurors Farris and Castleberry, each of whom declared in unequivocal terms his bias, was sufficient ground for excusing such jurors by the court, ex mero motu, notwithstanding the attempted waiver of the cause of challenge by the state and by the defendant. Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708; In the Matter of Spies, 123 U. S. 131, 8 Sup. 22, 31 L. Ed. 80; Reynolds v. U. S., supra.

[2] The right of trial by jury may be regulated by the Legislature, but not so as to impair any of the fundamental requisites of a jury. Baader v. State, 201 Ala. 76, 77 South. 370; Spivey v. State, 172 Ala. 391, 397, 56 South. 232; Sedgwick on Stat. & Const. Law, p. 486; Proffatt on Jury Trial, § 106. This right and its exercise by a defendant and its denial by the court is stated by Mr. Chief Justice Stone as follows:

"The right of trial by an impartial jury is a constitutional privilege, sanctioned by long observance, and should at all times be jealously guarded as one of the essential safeguards against the abuse of official power. But such abuse is not presumed. It must be shown, to authorize the imputation of error." Johnson v. State, 102 Ala. 1, 13, 16 South. 99, 103.

This record shows not only that there was no abuse of official power by the court in setting aside, ex mero motu, said jurors, but a discharge of its high duty and office in the exercise of the discretionary powers in question in securing to the defendant "the right of trial by an impartial jury." He cannot

demand and have more under the Constitutions, federal or state, or under the statutes having application. Evans v. State, 80 Ala. 4; 9 Am. St. Rep. 745, notes; 1 Am. St. Rep. 519, notes.

[3] In support of, and as against, the motion for a new trial, affidavits were submitted tending to show and to deny that a prejudicial extrinsic fact was considered by the jury, or any members thereof, while in the deliberation of the case, which may have affected the verdict. Such matter was properly presented for the consideration of the trial court by a motion for a new trial, rather than by a motion in arrest of judgment. Brister v. State, 26 Ala. 107; Franklin v. State, 29 Ala. 14; Croker v. State, 47 Ala. 53; Morgan v. State, 48 Ala. 65; Bolin v. State, 11 Ala. App. 35, 65 South. 433, and the refusal of the motion for a new trial is duly presented for review.

In McCormick v. Badham, 204 Ala. 2, 85 South. 401, 407, the authorities are collected to the effect that it is forbidden by public policy to permit a juror to testify as to what transpired between the jurors in their deliberations, or their manner of reaching a verdict on the evidence duly submitted to them on the trial, and that the affidavit of a juror may be received in support of a motion for a new trial, showing extraneous fact which may have influenced their verdict, and which was unduly before members of the jury while deliberating and before verdict rendered. Clay v. City Council of Montgomery, 102 Ala. 297, 302, 14 South. 646; Ala. F. & I. Co. v. Rice, 187 Ala. 458, 463, 65 South. 402; Van Tinder v. B. R., L. & P. Co., 202 Ala. 474, 80 South. 858; Hall v. State, 134 Ala. 90, 114, 32 South. 750; City of Eufaula v. Speight, 121 Ala. 613, 616, 25 South. 1009; B. R., L. & P. Co. v. Moore, 148 Ala. 113, 131, 42 South. 1024; Cont. Cas. Co. v. Ogburn, 186 Ala. 398, 403, 404, 64 South. 619; Montg., etc., Co. v. Mason, 133 Ala. 508, 531, 32 South. 261. An examination of the original record in Finney v. Newson, 203 Ala. 191, 82 South. 441, discloses the fact that the matter sought to be shown by the affidavit of a juror was what one juror stated to another during their deliberations, and held not error to deny such evidence on the ground of public policy. This was in consonance with the rule that what a juror thought or why he agreed to a verdict or the discussions or deliberations of jurors may not be received to impeach a verdict. B. R., L. & P. Co. v. Clemons, 142 Ala. 160, 37 South. 925; Van Tinder v. B. R., L. & P. Co., supra, 202 Ala. 476, 80 South. 858; City of Eufaula v. Speight, supra; Harper v. State, 16 Ala. App. 153, 75 South. 829; Cobb v. Hand, 12 Ala. App. 461, 68 South. 541. It has not been held incompetent to show by members of the jury whether they did read or were influenced by a paper or other extraneous fact that was improperly before them, and not introduced on the trial. McCormick v. Badham, supra; L. & N. R. R. Co. v. Sides, 129 Ala. 399, 403, 29 South. 798; Caldwell v. State, 203 Ala. 412, 420, 84 South. 272; B. R., L. & P. Co. v. Moore, supra.

The extraneous fact which came to the attention of the foreman and several others (not all) of the jurors during their deliberations was the opinion in Ex parte Byron Leith (this defendant):

"In the matter of the petition for writ of habeas corpus for bail. This case is submitted to me on the stenographic report of the evidence taken on the preliminary trial before Hon. E. W. Long, judge of probate, together with the evidence of several witnesses examined orally before me. I have given the evidence a careful investigation and examined the law as best I could."

It was further said, on consideration of a long line of authorities, that it is held in this state, when a malicious homicide is charged, to refuse bail in all cases where a judge would sustain a capital conviction if pronounced by a jury, on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail; that he (Judge Sowell) was—

"not prepared to say that I [he] would interfere with the verdict of a jury for the highest degree included in the charge, or that I [he] would not sustain a capital conviction if pronounced by a jury on such evidence of guilt as was exhibited to me [him] on this trial. Therefore the prayer of the petition is denied and the petitioner refused bail. This July 17th, 1920. [Signed] T. L. Sowell, Judge of the Fourteenth Judicial Circuit of Alabama."

[4] This was the written opinion on application for habeas corpus by this defendant for the same offense of which he stands convicted and prosecutes this appeal, and was signed by one of the two circuit judges embracing the county of Walker, where defendant was tried and convicted of the offense of murder in the first degree, and his punishment fixed at imprisonment in the penitentiary for life. It was competent to show by the affidavits of jurors and others that such extrinsic fact or matter came to the attention of a part of the jury during its deliberation.

[5-11] To secure to one accused of crime a fair and impartial trial, general rules as to the policy of the law are: (1) To keep the jury in a criminal case entirely separated from the world, permitting no outside communication with them from the beginning of the trial until the verdict is rendered, and that nothing shall occur outside of the trial which shall disturb their minds, leaving the jury entirely occupied with a consideration of the case which they are sworn to try (Shaw v. State, 83 Ga. 92, 9 S. E. 768; 134 Am. St. Rep. 1040, note); (2) that the same principle

prevailing with reference to communication or conversation between a juror and outsiders applies with greater force to communications or conversations between a juror and a witness or party at interest (State v. Crane, 110 N. C. 530, 15 S. E. 231; State v. Cartright, 20 W. Va. 32; Odle v. State, 6 Baxt. [Tenn.] 159); (3) and to improper conversations with counsel (Hutchins v. State, 140 Ind. 78, 39 N. E. 243); (4) that all courts are agreed that no communication whatever ought to take place between the judge and the jury after the cause has been committed to them, unless in open court, and, if practicable, in the presence of counsel in the cause (Johnson v. State, 100 Ala. 55, 14 South. 627; Cooper v. State, 79 Ala. 54; McNeil v. State, 47 Ala. 498; Rafferty v. People, 72 Ill. 37; State v. Rowell, 75 S. C. 494, 56 S. E. 23), and no improper communication be had between jurors and court officers while deliberating and trying to reach a verdict (134 Am. St. Rep. 1047); (6) courts have condemned the reception of any evidence by the jury in a criminal case outside of that produced at the trial—as an improper and unauthorized view or inspection of the locus in quo made with the purpose of understanding or illustrating the evidence and having a tendency to influence (De Bardeleben v. State, 16 Ala. App. 367, 369[1]); (7) taking out and consulting records, documents, or depositions not submitted as evidence on the trial, and which consultation may have influenced their verdict (Harwell v. State, 12 Ala. App. 265, 276, 68 South. 500; 16 R. C. L. § 115, p. 304); (8) the reading of a newspaper by the jury while in the discharge of their duty containing editorials or statements of fact pertaining to the trial, and which was calculated to have affected the verdict (Caldwell v. State, supra; People v. Stokes, 103 Cal. 192, 37 Pac. 207, 42 Am. St. Rep. 102; People v. Chin Non, 146 Cal. 561, 80 Pac. 681; Styles v. State, 129 Ga. 425, 59 S. E. 249, 12 Ann. Cas. 176; State v. Walton, 92 Iowa, 455, 61 N. W. 179; Cartright v. State, supra; State v. Jackson, 9 Mont. 508, 24 Pac. 213).

[12, 13] Chief Justice ANDERSON, Justices McCLELLAN, SAYRE, and SOMERVILLE are of opinion that the trial court committed no error in overruling the motion for a new trial, for reason stated by Judge Curtis in his opinion, which the reporter will set out in the report of the case. They think, however, whether all of the affidavits should or should not be looked to, that, if all of them are considered, it affirmatively appears that the opinion of Judge Sowell did not influence the verdict of the jury in the slightest to the prejudice of the defendant.

Justices GARDNER and MILLER agree

with the writer that the important question is whether there was a fair and impartial trial of defendant under the Constitution and statutes, by the 12 men composing the jury before whom he was tried. It will not be necessary to discuss in detail the effect of the affidavits submitted on the motion for new trial, other than to say that there was conflict as to when the improper document came before the jury, and whether, during their deliberations, it was read and considered by some of the jurors. Ten jurors said it was not read until after they returned from supper, and after they had taken a vote (before supper) fixing the guilt of the defendant as murder in the first degree. All of the jurors state that the punishment of the defendant was not fixed by them until after the jurors returned from supper, and then as indicated in the verdict. Several of the affidavits of jurors will illustrate the question for decision. Juror Black stated:

"We retired to the jury room and very soon afterwards voted on guilt of Byron Leith, finding him guilty of murder of the first degree. After this we went to supper; after supper we returned to the circuit court room to finish our deliberation. The foreman asked for rising vote to determine whether any one wanted to change from first to second degree murder. No one favored the change. I did not see nor hear reading of the paper—Judge Sowell's opinion."

Juror Lawson stated:

"After the court charged the jury and we had retired to the room to consider the case and during our consideration of the same we discovered" Judge Sowell's opinion. "I heard the same read and the same was discussed in the jury room during our deliberation of the case. I thought it had been given to us by the court for our consideration. I will say that I considered all papers furnished us by the court in arriving at the verdict in this case as I tried to consider everything the court gave us in arriving at a verdict. One of the jurymen, named Best, had it when I first saw it."

Juror Jones stated:

"After retiring to the jury room we voted on the guilt of the defendant and found him guilty of murder of first degree. We then went to supper. On our return we went to circuit court room, where we discussed the case some little bit. We then took our last vote on the punishment. I never saw or heard the paper read."

And Juror Russell stated:

"After supper we returned to the circuit court room to finish deliberation. I picked up Judge Sowell's opinion on habeas corpus proceedings, and I read a part of same, but never finished reading it. This was the first time I had seen this paper of Judge Sowell's. After a little discussion we voted on punishment and vote resulted in a unanimous vote for life imprisonment."

The twelfth juror made two affidavits, in which there is a conflict as to seeing the pa-

---

[1] 77 South. 979.

per or hearing it read. Other jurors than those above referred to say that they did not know of or did not consider the paper.

It is without conflict that after the jury returned from supper Judge Sowell's opinion was discovered, read, and considered by some of the jurors, as we have indicated; that a final vote was then taken to determine if any juror wished to change from murder in the first degree to second degree, and vote was taken fixing the degree of the punishment. This final exercise of judgment and discretion by the whole jury was necessary to return the verdict of guilty of murder in the first degree. To the time this final vote was taken any number of jurors composing the panel 'had the right to change their minds or withhold consent to a verdict being returned pursuant to former discussions or action taken by them in defendant's case. We do not believe this court can say that the second or final consideration and vote determining the degree of the homicide and fixing defendant's punishment for murder in the first degree was taken freed from the influence of the decision of Judge Sowell as to the degree of guilt, and it may be that, without such influence, the degree of guilt may have been reduced, or that some extenuating circumstance in evidence may have resulted in further consideration of the whole evidence, affecting the verdict rendered. Nixon v. State, 68 Ala. 535; Whitehead v. State, ante, p. 288, 90 South. 351.

All the justices, agree that, on the introduction of evidence, in the oral charge to the jury and in the giving or refusing of special written charges requested, no error intervened at the trial, and that a discussion of the same in detail is unnecessary, as no new questions are presented thereby.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.

GARDNER, THOMAS, and MILLER, JJ., dissent.