Michael E. Donahoo was tried by a jury in Jefferson County, Alabama, on a charge of rape, found guilty and sentenced to life imprisonment. On conviction, appellant immediately gave notice of appeal and filed a motion for new trial. A hearing on the motion was held and the motion was denied.
The sufficiency of the evidence was not raised by a motion to exclude the State's evidence, but was mentioned as grounds for a new trial in appellant's motion for new trial.
Sufficiency of the evidence was not insisted on at the hearing on the motion, and the only issue raised at the hearing, and on appeal, concerns the conduct of the trial court's bailiff after the trial, while the jury was deliberating.
Suffice it is to say that the following recitation of facts is sufficient to support appellant's conviction: The prosecutrix, a waitress at T.P. Crockmire's Restaurant and Lounge, walked to the employee's parking lot at approximately 6:30 P.M. on October 25, 1976, and got into her car. As she was leaving the parking lot, the man she identified as the appellant forced his way into her car by threatening her with a broken drinking glass. The appellant told her that if she "screamed or hollered, or anything he would cut her."
The prosecutrix testified that she and the appellant rode around in her Volkswagen for approximately forty-five minutes and that, during that time, he hit her in the face and told her to perform various sexual acts while he drove. She said that he told her that he "was going to cut me . . . going to kill me."
According to the prosecutrix, while appellant was driving they passed Brookwood Village, drove some two miles further to a dead-end street, and got out of the car. At that time, the appellant told her that "he had problems . . . [and] that he had been accused of rape before." She said that he then hit her again and knocked her against the car and told her take off her clothes. After she had removed all of her clothes, she tried to run away down the road, but the defendant grabbed her by the hair, dragged her back to the car, and had sexual intercourse with her.
She testified that afterwards, the appellant let her put her clothes on.
Appellant then drove to the Woodland Hill Apartments where he took an apron, which was part of her uniform, and wiped the steering wheel, the gear shift and the door. He then got out and walked toward the tennis courts. The prosecutrix stated that she immediately drove across the street to a service station where she called the Birmingham Police Department.
During the trial, she identified the appellant as her assailant and said that she particularly "noticed his buck teeth."
 I
The appellant contends that he was denied a fair trial "by improper communications between the jury and a court officer during the deliberations of the jury." He complained that when the court officer, *Page 77 
Bailiff Joe D. Newton, was presented with the jury's written question inquiring as to the "minimum times of service for sentences of varying lengths," he presumed to inform the jury, not only that the question could not be answered by the court, but further, that the court ". . . could only answer questions of law, this was a question which came under the Executive Department of the State. . . ."
In support of this contention, the appellant has cited Leithv. State, 206 Ala. 439, 90 So. 687, and Roberts v. State,26 Ala. App. 331, 159 So. 373, which we find are not directly applicable to the case at bar.
Leith v. State, supra, does not support the appellant's contentions that such communications would deny him a fair trial. That case concerned extrinsic physical material, in the form of an opinion by the trial judge dealing with an application for habeas corpus by the accused, which was inadvertently left in the jury room. This material came to the attention of a few but not all, of the jurors during their deliberations.
In Leith, supra, after considering the affidavits of all the jurors, the court stated that it affirmatively appears that the document did not influence the verdict of the jurors.
In Roberts v. State, supra, the court was primarily concerned with the quotient verdict submitted by the jury. The court stated that, due to the deputy sheriff's refusal to allow the jury to see or question the judge regarding the punishment to be fixed, the conduct of the deputy "may have influenced the jury to have resorted to a quotient verdict."
In the case at bar, there was no refusal by the bailiff to allow the jury to see or question the judge. Instead, there was a communication which, although admittedly improper, did not serve to influence the verdict arrived at by the jury.
Appellant has also cited to us many cases prohibiting any comment by a trial judge, to a jury trying an accused's case, concerning the possibility of parole. In our examination of the transcript, we did not find any evidence that the judge had made any reference to parole.
At the hearing on the motion for new trial, it was shown that, after the jury had retired to deliberate, one member knocked on the door of the jury room and told the bailiff that they had a question. Newton then instructed them "to put it in writing." According to Newton, the jury then knocked on the door again and presented him with the written inquiry, which reads as follows (from the court's Exhibit No. 1, on motion for new trial):
"JUDGE
"Can you answer this question for us.
 "What are the minimum times of service for this crime.
 "for 20 Sentence "30 "40 "50 "Life. . . ."
Newton testified that he then stated, in substance:
 "The judge had told you in his charge he could only answer questions of law. This was a question which came under the Executive Department of the State and could not be answered by the Judge."
Newton went on to say that it was his impression that it was the standing instruction of the trial judge, in the past, on the numerous occasions when similar questions had been asked, to give substantially the same answer he had given to this jury.
According to Newton, immediately after the question was handed to him, he took the written question and showed it to the judge. Newton said that the defense attorney and the district attorney were with the judge at the time he informed him (the judge) of what he had said to the jury. Newton testified that the defense attorney did not raise any questions, ask for any instructions, or make any comment in particular about the incident, at that time.
Following the bailiff's testimony, ten jurors were called who had served on the panel in the accused's case. Their testimony reflected that the question had been asked among the jurors before they had submitted *Page 78 
it to the judge, but that none of them had known the answer.
Several of the jurors commented that, when the bailiff told them that the judge could not instruct them on the subject, they "did not pay any more attention" to it, "threw it out," and that "it was dropped." One juror stated:
 "Our deliberations were that the crime deserved the sentence of life because in the opinion of the jury, anything less than that he wouldn't serve any time at all, that he wouldn't probably serve any time for that crime if it were less than that."
Thus, the consensus of the jurors was that punishment of life imprisonment fit the crime.
The Supreme Court of Alabama affirmed Satterfield v. State,212 Ala. 349, 102 So. 691, in which one or more of the jurors had asked the bailiff, "whether or not second degree murder would carry 25 years?" Another juror stated that the bailiff had also answered questions concerning the number of years fixed as punishment for manslaughter in the first degree and murder in the second degree.
In that case, the evidence showed at the time of the bailiff's conversation with the jury, that the verdict of guilt had already been agreed upon and, in fact, had been written out. It was learned that the extent of the conversation was only to confirm the jurors' first impression that, "as to the form of the verdict, second degree murder `would carry 25 years.'" The Supreme Court stated:
 "While all of this was very irregular and improper, and to be condemned, yet, when it affirmatively appears the irregularity was without injury or prejudicial effect upon the defendant's cause, a reversal cannot be rested upon the action of the court in overruling the motion for a new trial upon this ground."
Under the rationale of Satterfield v. State, supra, this court will not set aside a verdict because of comments between jurors and the bailiff, which, even though improper, were not calculated to prejudice the accused or to influence the verdict.
All conversation between jurors and officers of the court does not amount to misconduct, per se, and a showing of such communication does not raise the presumption that it improperly influenced the jury.
The irregularity here did not constitute reversible error. Under the circumstances surrounding this incident, the unauthorized communication was fully explained, as can be seen from the transcript of testimony during the hearing on the motion for new trial. It affirmatively appears that the jury was in no way influenced by the communication with the bailiff.
No issue can be raised that the bailiff made any prejudicial comments regarding the possibility of appellant's parole. There was no testimony at the hearing to support such a conclusion.
We also note that it is impossible to prevent jurors, during their secret deliberations, from discussing matters such as parole, or any other subject of which they have common knowledge. It is only when extraneous matter is injected by the court or its personnel, beyond the walls of the open courtroom, that it is error.
We have no alternative, under the rationale of Satterfield v.State, supra, than to affirm this case. We are constrained to say that every accused has the lawful right to have his cause tried in open court, and to have an opportunity to be present and heard in respect to every transaction concerning his case. It is his right to be present and attended by counsel when the court communicates with the jury.
The bailiff is an officer of the court and is the guardian of the jury room. It is his responsibility to see that no one intrudes on the jury's deliberations. At no time is the bailiff justified in communicating with the jury in any manner, concerning the accused's case, except in his capacity as a messenger between the jury and the court.
No communication, whatever, should take place between the judge and the jury *Page 79 
after the cause has been submitted to them, unless in open court with all the parties and their attorneys present. The sanctity of the jury room must remain inviolate, and it is the trial judge's responsibility to maintain that sanctity. Anything less is an abdication of his judicial responsibility.Leith v. State, supra.
 II
The record reflects that, at the time the bailiff made his improper communication with the jury known to the court, the defense attorney was present and heard what had transpired. He made no objection and did not request any curative instructions, nor did he make a motion for a mistrial at that time. In fact, based on the record, this matter was raised for the first time on motion for new trial. Under these circumstances, the error was not preserved and reveals a "waiver." Fuller v. State, Ala.Cr.App., 365 So.2d 1010.
The facts in Fuller, supra, are very similar to those in the case at bar. There, the jurors, after having returned from a luncheon recess, questioned the bailiff about whether they would have to remain overnight. In response to a female juror's question, the bailiff said:
 "[W]hen they went in to reach a verdict, they would be kept together at the request of the Defendant."
The comment was called to the bailiff's attention immediately afterwards by the defense attorney, and, at that point, the bailiff admitted that he had made a mistake.
However, this court stated that, though the improper communication occurred prior to the jury's deliberations, no objection had been made and the error was not timely preserved.
The court also observed that the motion for new trial is usually "the initial and only way in which an accused may raise an objection" when an improper communication comes to the attention of the accused or his counsel after the verdict has been rendered. Further, the court stated that "the grounds urged for a new trial must ordinarily have been preserved at the trial by timely and sufficient objections." Fuller v.State, supra. In closing, the court indicated that citing Vinetv. State, 38 Ala. App. 299, 83 So.2d 357, in the absence of timely objections, any grounds which would have supported the motion for a new trial were presumed to have been waived. See also Cardwell v. State, 1 Ala. App. 15, 56 So. 12.
After reviewing the transcript of evidence and the law applicable to the facts, we are of the opinion that the judgment of conviction should be affirmed.
AFFIRMED.
All the Judges concur.