TAYLOR, Presiding Judge.
On December 9, 1988, the appellant, Johnny Lee Williams, was indicted by the Jefferson County grand jury for the attempted murder of Alonzo McConico, by shooting him with a pistol, a violation of § 13A-6-2 and § 13A-4-2, Code of Alabama 1975. At trial, he was convicted of the lesser included offense of assault in the second degree, a violation of § 13A-6-21, Code of Alabama 1975. The appellant was sentenced to 22 years in the state penitentiary .
During the trial of this case, the trial court specifically admonished the jurors as follows:
“And let me remind you, ladies and gentlemen, that each and every one of you are on your individual honor to abide by the admonishments of this Court. The reason for that is that the only evidence that you will consider in this case will come from this witness stand on my left, and from no other source whatsoever.” (Emphasis added.)
Despite this admonishment from the trial court, Juror Helen Riggins, on her way to the courthouse on the morning of June 14, 1989, drove by the scene of the crime and viewed the layout of the buildings, dwellings, and street lights at the scene and the distances between them. The layout of the crime scene was important in this trial because the appellant’s exact location when the shots were fired was at issue. When Juror Riggins returned to the jury room to resume deliberations, she told her fellow jurors what she had observed and that her perception of the crime scene was inconsistent with the testimony of several witnesses.
On October 12, 1989, the appellant filed a motion for a new trial based on the alleged misconduct of Juror Riggins. Attached to the appellant’s motion was the affidavit of Juror Riggins, which stated as follows:
“On Wednesday morning, June 14, 1989, prior to my arrival at the Court, I went to the scene of the alleged crime and viewed the area which had been testified about by the several witnesses in *885 this case. My viewing of the scene of the alleged crime established in my mind that the witnesses, who I had heard testify, could not have been telling the truth. My viewing of the scene of the alleged crime had an influence on my subsequent decision as a juror.
“Upon my arrival at Court on Wednesday morning, I discussed what I had seen with the other jurors and told them of my findings. We continued our deliberations and at approximately 11:00 a.m. we reach a verdict of guilty to second degree assault.” (Emphasis added.)
On November 3, 1989, the appellant’s motion for a new trial was heard before the trial court. Juror Riggins testified, in pertinent part:
“Q [By Tammy Montgomery, Deputy District Attorney]: What if anything did you do once all of the jurors had assembled?
“A [Riggins] I had told them that I had gone by there.
“Q And was that, in fact, approximately the statement you made?
“A I said I went by there, and that from what I could tell, nobody that was testifying had any idea of distances.
“Q Did you eliminate any particular witness, as to who you were referring to?
“A No. I covered, I think, all of them.
“Q So you were attributing the statement you made to everybody that testified?
“A Yes.
“Q Did you make any further admission to them regarding your judgment of distances?
“A I said that things were a lot closer together than what was testified to, as far as distances were concerned.”
[By Mr. Davidson, Defense Counsel.]
“Q You did have an opportunity, however, to form a judgment as to the distance between the houses—
“A Yes.
“Q —and from how far a car was to the houses—
“A Yes.
“Q —and you had an opportunity, then, to relay that train of thought to what the witnesses had testified to.
“A That’s right.
“Q You had an opportunity to form your own impression of the setting, as opposed to what the witnesses had testified that setting to be?
“A That’s right.
“Q Okay. And you discussed that with the other jurors. With all of them, or just one or two, or—
“A No. When we started meeting, we discussed that — I think most of us had noticed what time it got dark the night before, because it had been a big thing as to exactly what time all this occurred; and then I said that I drove by there that morning to see for myself. I did not know that I wasn’t supposed to do this.
“Q Well, what you saw was not, it didn’t jibe with what the witnesses had said; is that right?
“A No.
“Q Do you remember which witness: Mrs. McConico, or the girlfriend, or— “A (No audible response.)
“Q Was it all of them?
“A Basically, it was all of them. The one that was, that I felt was most correct in describing how the store was set up to the houses, was the witness that was a prisoner.
“Q Then, is it your statement that what you saw had an effect on your decision? Did it have an effect? Any effect whatsoever?
“A It added to my doubt about a lot of the testimony, yes.
“Q Therefore, it did influence your decision somewhat?
“A I can’t say I would have done it differently if I had not gone by there, or not. I don’t know. They were trying to find a gray area in there that I found very difficult to deal with.
“Q What you saw obviously added to the evidence that you heard from the witness stand.
“A Yes.”
[Redirect by Ms. Montgomery.]
*886 “Q Ms. Riggins, it didn’t add to, but rather distracted or took away from the evidence that you heard from the witness stand; is that right?
“A It didn’t take away from it. It added to my knowledge of what the location was like.
“Q What you really did back there with the mental impression that you made on that morning was to discredit the testimony of the witnesses regarding distance; is that right?
“A I already had doubts in my mind about that, and when I saw that, yes, it discredited that.
“Q So in that respect, as regards the distances, in your mind that was favorable to the defendant at that time?
“A I don’t, I don’t know that it was favorable to the defendant.
“Q Well, if you said from your impression that those witnesses had to be incorrect, then that would extend to the defendant, he already had—
“A Okay. But it was all of them. Because even the man that testified for the defense—
“Q All the witnesses?
“A Yes.
“Q All the witnesses. You discredited all the witnesses, then?
“A Yes. To a certain point.
“Q And so then, that was in the defendant’s favor, in your mind?
“A Possibly.
“THE COURT: I’m just going to ask Ms. Riggins one question: The original charge was attempted murder.
“THE WITNESS: Yes.
“THE COURT: The jury found this defendant guilty of assault in the second degree.
“THE WITNESS: Yes.
“THE COURT: Would you have voted differently had you not gone out there?
“THE WITNESS: I honestly don’t know. If the choices had been guilty or not guilty, I would have voted differently.
“THE COURT: But you had a choice of attempted murder, assault in the first degree, and assault in the second degree.
“Would you have voted differently had you not gone out to the scene? You voted for assault in the second degree.
“THE WITNESS: I can’t say that it would have made me vote differently. I can’t say that — I had too many doubts about the whole thing. Because when we started out, I understood we were deciding if the man was guilty or not guilty, but then at the end, that wasn’t the choices. We had four choices to make.
“THE COURT: I’m aware of that. And you made one choice. The only question I’m asking you, Ms. Riggins, is would you have made the same choice had you not gone out to the scene?
“THE WITNESS: I probably would have.”
On November 17, 1989, the trial court denied the appellant’s motion for a new trial.
In Crowell v. City of Montgomery, [Ms. 3 Div. 263, March 16, 1990] (Ala.Cr.App. 1990), this court stated:
“The court in Arrington v. State, 23 Ala.App. 201, 202, 123 So. 99, 101 (1929), recognized the following as the law in this State:
“ ‘ “A new trial should ordinarily be granted when jurors, without the authority of the court or consent of the parties, have examined or inspected a place or thing which is the subject of conflicting evidence. * * * That the juror was actually influenced by the examination or inspection need not be shown. It is sufficient that he may have been so influenced.” ’ 29 Cyc. 801.
“ ‘[T]he general principle, that “Courts have condemned the. reception of any evidence by the jury in a criminal case outside of that produced at the trial — as an improper and unauthorized view or inspection of the locus in quo made with the purpose of understanding or illustrating the evidence and having a tendency to influence,” seems well established. *887 Leith v. State, 206 Ala. 439, 90 So. 687 [ (1921) ].’ ”
Crowell, supra, at 7.
In Reed v. State, 547 So.2d 596 (Ala. 1989), Chief Justice Hornsby wrote:
“A juror’s conducting an experiment outside the presence of the court constitutes juror misconduct because it inherently results in the introduction of facts, whether consistent or inconsistent with the evidence already before the jury, that have not been subject to the rules of evidence or to cross-examination by either party. See Ex parte Lasley, 505 So. 2d 1263, 1264 (Ala. 1987). However, not every instance of juror misconduct warrants a new trial. Id. Each case involving juror misconduct must be judged by its own peculiar facts, and the conduct, when found to be prejudicial, will require a reversal. Bell v. State, 227 Ala. 254, 256, 149 So. 687, 689 (1933).
“The test for determining whether juror misconduct is prejudicial to the defendant and, thus, warrants a new trial is whether the misconduct might have unlawfully influenced the verdict rendered. Ex parte Troha, 462 So.2d 953, 954 (Ala. 1984); Roan [v. State], 225 Ala. 428, 435, 143 So. 454, 460 (1932). Leigh [v. State], 206 Ala. 439, 443, 90 So. 687, 690 (1921). Once the trial court investigates the misconduct and finds, based on competent evidence, the alleged prejudice to be lacking, this Court will not reverse. See Bascom v. State, 344 So.2d 218, 222 (Ala. Cr.App.1977).”
Reed, supra, 547 So.2d at 597.
Our Alabama Supreme Court further held in Reed that a juror’s having conducted a home experiment in order to test the credibility of the evidence was not so prejudicial as to warrant a new trial because the juror told no other member of the jury about the experiment and, although that particular juror might have been unlawfully influenced, she testified that she remained unaffected by the experiment. Moreover, the Court held that to obtain a new trial for juror misconduct, the appellant need not show that the juror’s home experiment resulted in the introduction of “new” facts; rather, the appellant must show that the experiment might have unlawfully influenced the verdict. Id. at 598.
In the case at bar, there is no doubt that Juror Riggins’s trip to the crime scene constituted juror misconduct. Thus, the issue becomes whether the misconduct requires a new trial. We are of the opinion that it does.
The facts in this case are distinguishable from those in Reed, supra. Unlike in Reed, Juror Riggins discussed with the other jurors what she had observed at the scene of the crime. Also, Juror Riggins admitted, both in her affidavit and at the hearing on the motion for a new trial, that her viewing the crime scene had an influence on her subsequent decision as a juror.
It is questionable whether Juror Rig-gins’s misconduct adversely affected the appellant. However, our Alabama Supreme Court, in Ex parte Lasley, 505 So.2d 1263 (Ala.1987), held that when it cannot be absolutely proven that extraneous information obtained through juror misconduct was in no way affected the appellant, then a new trial is mandated. The Court further reasoned:
“The integrity of the factfinding process is the heart and soul of our judicial system. Judicial control of the jury’s knowledge of the case is fundamental. Our rules of evidence are designed, so far as humanly possible, to produce the truth and to exclude from the jury those facts and objects which tend to prejudice and confuse. Evidence presented must be subject to cross-examination and rebuttal. The defendant’s constitutional rights of confrontation, of cross-examination, and of counsel are at stake.”
Lasley, supra, 505 So.2d 1265.
The appellant’s conviction is therefore reversed and this cause remanded to the Jefferson County Circuit Court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.