Rape and sodomy in the first degree; fifteen years.
The evidence presented by the State was sufficient to support the appellant's conviction of forceful rape and sodomy. No issue was made at trial, on the motion for new trial, or on appeal regarding the sufficiency of that evidence. Therefore, we will recite only those facts necessary for the examination of the single issue raised in the appellant's brief.
The appellant insists that the court erred in refusing to grant him a new trial because of the misconduct of one of the jurors. He argues that the jury received new evidence after retiring to deliberate the case. This contention is based upon testimony presented at the hearing on the motion for new trial which showed that, after the jury retired to deliberate the appellant's case and were excused for the night, one of the jurors enacted a portion of the evidence.
The victim testified at trial that the appellant forced her to crawl on her back down a carpeted hallway before he raped her. A juror, George F. Wertz, testified at the hearing that another juror whom he would recognize, but did not know by name, stated that he had enacted part of the victim's testimony by moving on his back on a rug. Wertz recalled that the juror had told the other jurors what he had done, but stated that the juror was merely expressing an opinion in verifying something he had heard during the testimony. Wertz said, "It was a pure statement of fact. . . ." According to Wertz, the juror made the statement before the final vote but after "many votes had been taken." Wertz stated that the verdict was based on the evidence presented at trial and that he had followed the instructions that the trial court had given. *Page 1370 
Franklin D. Watkins testified that after the jury had retired to deliberate the appellant's case and after a vote had been taken they were excused for the night and allowed to return to their homes. While at home, alone, he enacted part of the evidence by moving on his back through his den down the hall into his bedroom. According to Watkins, he did this to determine "if there were any bruises on me which there weren't." He said he had done this for "peace of mind" and to verify the testimony. Watkins stated that he did not discuss the enactment with anyone at his household, nor did he tell any of the jurors of it. Further, he stated that "a poll had been taken before I tried it and I did not change my vote afterwards."
During cross-examination, Watkins testified that he had based his verdict on what he had heard from the witness stand and had followed the instructions of the trial court regarding the law in the case. Watkins also recalled that he made a statement to the jurors after the verdict in the presence of the appellant's attorney while he and the other jurors were in front of the circuit clerk's office.
Robert Zinser, the foreman of the jury, recognized Mr. Watkins as the juror who, before the final vote was taken, made the statement that "when he went home that night he conducted an experiment by crawling down his hall on his back using his elbows." Mr. Zinser also recalled that Watkins had exhibited his elbows and said he had received no bruises or abrasions. Zinser acknowledged that his own deliberations resulted in determining whether the complaining witness or the defendant had the believable story.
On cross-examination, Zinser acknowledged that his verdict was based on the evidence given to him from the witness stand and that he had followed the instructions of the trial court on the law. Further, he acknowledged that the experiment or enactment by Mr. Watkins did not offset the evidence he had heard.
No other jurors were called but the district attorney made it known that he was going to call some of them to state whether they had heard any discussions. After the district attorney's statement, the court announced:
 "It doesn't make any difference whether they all say that, it doesn't matter right now because what has been testified to is sufficient. I am not saying which way I'm going to rule because I don't know, but I am saying he doesn't have to do any more."
At that point, the hearing was completed without anything further from the appellant or the State.
The trial court, shortly afterwards, made the following order:
 "Defendant asserts in his motion for a new trial misconduct of the jury in considering an `experiment' of a juror conducted outside the presence of the jury and reported to them. Construing the facts most favorable to the defendant, and considering the testimony ore tenus, the court does not find such activity creating extraneous facts upon which the jury might have wrongly been influenced. The motion for New Trial denied. (White v. State, Ala.Crim.App., 380 So.2d 348; O'Berry v. State, Ala.Crim.App., 361 So.2d 1132 and cases cited therein.)"
The general principles controlling alleged misconduct of a juror were set out by this court in O'Berry v. State,361 So.2d 1132 (Ala.Cr.App.), cert. denied, 361 So.2d 1135 (Ala. 1978):
 "In a criminal case the jury should not consider evidence outside that produced at trial, or take out and consult records, documents, or other material not submitted as evidence on the trial and which may influence their verdict. Leith v. State, 206 Ala. 439, 90 So. 687 (1921). Each case of alleged improper conduct of jurors during trial and deliberation must be judged by its peculiar facts. Bell v. State, 227 Ala. 254, 149 So. 687 (1933). The test is not whether the conduct did influence the jury but whether it might *Page 1371 
have. Allred v. State, 55 Ala. App. 74, 313 So.2d 195, cert. denied, 294 Ala. 751, 313 So.2d 203, cert. denied, 423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86
(1975); Gilliland v. State, 266 Ala. 24, 93 So.2d 745
(1957)."
The same principles were restated in White v. State,380 So.2d 348 (Ala.Cr.App. 1980). There this court found no reversible error when a juror, after deliberations had begun and while at home, examined a shotgun similar to one by which the victim was killed. The juror testified at the hearing on the motion for new trial that her examination of the weapon did not in any way influence her decision.
In the present case, nothing appears in the testimony of the juror as it was given on the motion for new trial that tends to show that he did anything other than attempt to check the victim's testimony when he enacted that portion of the evidence when the victim was forced to crawl on her back. Also there is nothing to show that any new facts were introduced as a result of the juror's enactment.
In the absence of a showing that some new fact harmful to the appellant was discovered by the enactment, which might have influenced the jury, such action by the juror would not require the granting of a new trial. The juror's enactment did not have the effect of putting the jury in possession of evidence not introduced at trial. Therefore, in the absence of a showing that new facts were introduced to the jury by the juror's enactment, the order of the circuit court in denying the motion for a new trial was in no way an abuse of discretion.
Although we are affirming the judgment of conviction by the Madison Circuit Court, we do not want to be understood as condoning the actions of the juror in this case. On the contrary, we condemn it in the strongest terms and limit our holdings to the narrow facts of this case.
AFFIRMED.
All the Judges concur.