Joseph Augustus Reed, the appellant, was convicted for the sale of cocaine and sentenced to ten years' imprisonment. That sentence was suspended with Reed to serve one year in jail and five years on probation. Reed raises two issues on this appeal from that conviction.
 I
Reed claims that State's exhibit one, an envelope containing the crack-cocaine allegedly purchased from Reed by an undercover reserve police officer, should not have been admitted into evidence at trial because the State did not establish a proper chain of custody.
Applying the principles and reasoning of the court in Exparte Williams, 505 So.2d 1254, 1255 (Ala. 1987), we find that the conflicting testimony of Reserve Police Officer *Page 595 
Joseph McKinney that Police Officer Donald Peers placed the cocaine in the night depository of the city lab and Officer Peers' testimony, as corroborated by others, that he delivered the cocaine to a person at the lab created only a weak link and not a break in the chain of custody of the cocaine. "As such, it 'presents a question of the credit and weight to be accorded rather than of the admissibility of the item.' " The general rule is, "[T]he fact that witnesses for the prosecution contradict or give evidence tending to impeach one another does not preclude a verdict being based on the testimony of such of them as may be believed." Jones v. State, 469 So.2d 713, 716
(Ala.Cr.App. 1985).
 II
Reed argues that his motion for a new trial should have been granted because a juror conducted a home experiment. We agree.
Reserve Police Officer McKinney testified at trial that he purchased the cocaine from the defendant. Officer Peers corroborated McKinney's identification of the defendant and testified that he observed the transaction, which occurred at night, through the tinted windows of a van.
After the jury had begun its deliberations it was recessed for the night and began its deliberations the next morning. At the hearing on the motion for new trial, juror Daisy Fay testified that during that recess she returned home and "looked out [her] van to see if you could see out windows that were tinted at night" because "[t]here was a question in [her] mind as to whether the officer could see out the window of the van, a tinted van at night." She stated that before she looked through the windows she was having "some problems" with Officer Peers' testimony.
Ms. Fay testified that she told the other members of the jury about her experiment only after the verdict had been returned. She stated, "The other man asked me why had I changed my verdict and I told him. I felt the man was guilty to start with."
The legal principles which govern the resolution of the present issue were recently set forth in Ex parte Lasley,505 So.2d 1263, 1264 (Ala. 1987):
 "There is no doubt that the home experiments constituted juror misconduct. The only question is whether the misconduct requires a new trial. The standard for determining whether juror misconduct requires a new trial is set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932).
 " 'The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered.' (Emphasis added.)
 "The Roan test mandates reversal when juror misconduct might have influenced the verdict. This test casts a 'light burden' on the defendant. Ex parte Troha, 462 So.2d 953 (Ala. 1984)."
Application of those principles to this case requires that Reed be granted a new trial on the basis of juror misconduct.
Bolt v. State, 428 So.2d 1369 (Ala.Cr.App. 1982), cert. denied, Ex parte Bolt, 428 So.2d 1371 (Ala. 1983), involved a prosecution for rape and sodomy. After the jury had been excused for the night and while at home, a juror "enacted part of the evidence by moving on his back through his den down the hall into his bedroom." 428 So.2d at 1370. This Court held that a new trial was not required because there was nothing to show that the juror "did anything other than attempt to check the victim's testimony when he enacted that portion of the evidence when the victim was forced to crawl on her back,"428 So.2d at 1371, and because "there is nothing to show that any new facts were introduced as a result of the juror's enactment."428 So.2d at 1371. Although affirming the conviction, this Court condemned the juror's conduct "in the strongest terms and limit[ed] our holdings to the narrow facts of this case."428 So.2d at 1371.
The significant fact which distinguishes Bolt from the present case is that in Bolt the experiment did not cause the juror to *Page 596 
"change [his] vote afterwards." Bolt, 428 So.2d at 1370. Here, Ms. Fay testified that even though she felt the defendant was guilty "to start with," she changed her "verdict" after conducting the home experiment. In Bolt, the juror testified that he had based his verdict on what he had heard from the witness stand. 428 So.2d at 1370. Here, there was no similar testimony. Each case of alleged improper conduct on the part of the jury must be judged by its own peculiar facts. Bell v.State, 227 Ala. 254, 256, 149 So. 687 (1933).
In this case, the integrity of the factfinding process has been impugned. See Lasley, 505 So.2d at 1264. The judgment of the circuit court is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
All Judges concur.