The appellant was convicted of theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama (1975). He was sentenced to three years in the State Penitentiary, but the trial court suspended the sentence and placed the appellant on *Page 1254 
probation for five years. He was also ordered to pay $30,640.91 and fined $25 to be paid to the Victims Compensation Fund.
 I The appellant argues that the evidence was insufficient to sustain his conviction of theft of property in the first degree. Specifically, he argues that the evidence failed to prove the element of specific intent.
Theft of property is defined by § 13A-8-2, Code of Alabama
(1975), as follows:
 "A person commits the crime of theft of property if he:
 "(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
 "(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property."
Theft of property in the first degree is defined by § 13A-8-3,Code of Alabama (1975):
 "(a) The theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree."
The State provided evidence that the appellant began working for Estes Oil Company in October 1984 and was eventually promoted to manager of the Cox Creek Station. In October 1986, the appellant was approached by Ed Estes, the owner of Estes Oil Company, about purchasing the merchandise inside the Cox Creek Station. The appellant agreed to do so and also continued to manage the store for Ed Estes. Under their agreement, the money made from the merchandise inside the store belonged to the appellant and the money made by the sale of gasoline, diesel fuel, and kerosene belonged to Estes Oil Company. Further, the appellant was still paid as manager of the station. Part of the appellant's job was to take the money made for Estes Oil Company from the first shift immediately to a nearby bank to be deposited. He was instructed that the deposits were to be made as soon as possible and was never given permission to hold out a deposit or to take a deposit home. J.T., another employee of Estes Oil Company, testified that he made five deposits for the appellant during the period from November 1986 until January 1987. The appellant never contacted Ed Estes about any problems he was having concerning deposits.
On January 21, 1987, the bookkeeper for Estes Oil Company was contacted by the bank and informed that there were insufficient funds in the Estes Oil Company checking account. It was initially determined that 105 deposits, totalling $177,000, were missing. Estes Oil Company's accountant discovered that all of the missing deposits came from the Cox Creek Station. When the appellant was confronted with the problem, he told Ed Estes that the money was at his apartment and that he would get it to him in a few days. However, Estes demanded the money immediately, whereupon the appellant drove to the station, removed a brown bag from the safe, and then drove to his apartment. Ed Estes and J.T. followed the appellant to the station and then to his apartment. The appellant retrieved two large garbage bags, containing money, from his apartment and subsequently, after matching the money with deposit slips, it was determined that only 94 of the 105 deposits were accounted for. The deposits were missing $14,516.24. Furthermore, it was subsequently determined that Estes Oil Company was missing a total amount of $30,640.91.
The appellant testified that he began holding back deposits because "they" were short of money. He further testified that he attempted to discover who was taking the money. He explained that he kept the deposits in the safe until mid-January, when he took them home to determine how much was missing.
The evidence was sufficient to support a conviction of theft of property in the first degree. See Airhart v. State,477 So.2d 976 (Ala.Cr.App. 1984), reversed on other grounds,477 So.2d 979 (Ala. 1985); Beaver *Page 1255 v. State, 455 So.2d 253 (Ala.Cr.App. 1984); Waldrop v. State,439 So.2d 1359 (Ala.Cr.App. 1983). This evidence was also sufficient for the jury to infer that the appellant had the requisite intent to deprive. McCord v. State, 501 So.2d 520,529 (Ala.Cr.App. 1986).
 "In a theft trial, intent is a question for the jury. McMurphy v. State, 455 So.2d 924, 928
(Ala.Cr.App. 1984); Craig v. State, 410 So.2d 449
(Ala.Cr.App. 1982). 'Intent can only be shown by facts and circumstances from which the jury is authorized to draw the inference.' Burk v. State, 22 Ala. App. 107, 108, 114 So. 71, cert. denied, 216 Ala. 655, 114 So. 72 (1927). 'The scintilla rule does not apply in a criminal case.' McArdle v. State, 372 So.2d 897, 901 (Ala.Cr.App.), cert. denied, 372 So.2d 902 (Ala. 1979). 'Intent, . . . being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' Pumphrey v. State, 156 Ala. 103, 47 So. 156, 157 (1908)."
McCord v. State, supra, at 528-29.
 II
The appellant argues that the trial court erred in failing to allow into evidence certain evidence which he alleges was relevant to prove his intent and his innocence of the crime. The appellant argues that the trial court so erred on six occasions.
The appellant testified that he gave J.T. a deposit for $1,281 to be made to his account on January 2, 1987. However, the appellant testified that this deposit was never credited to his account. The defense counsel then asked the appellant if he made any other deposits about that same time. The appellant responded that he made one on the same afternoon for $2,642. When he was asked why he made the second deposit, the State objected to the question and the trial court sustained the objection.
The appellant argues that the inquiry was relevant to show the appellant's intent and was relevant to indicate that J.T. was the guilty party. However, other testimony had been presented that the appellant made deposits during this time period and the testimony would not have been relevant toward the appellant's intent to deprive Ed Estes of $30,640.91. Moreover, the testimony concerning J.T.'s failure to deposit the money given him by the appellant was not excluded from evidence.
The appellant further argues that he should have been allowed to testify that it was his intent to get together with Ed Estes concerning the loss of deposits. The following transpired during the appellant's testimony:
 "Q [DEFENSE COUNSEL]: Did — and you planned to — when you completed your study of the deposits — to go and meet with Mr. Estes?
 "A: I had tried to figure out a way of approaching him with this matter, you know, in the future. I — you know at that time, I didn't know how I was going to bring it around to him.
 "Q: And you had not made a decision as to what day you were going to sit down with Mr. Estes at that time?
"A: Yes, sir.
 "Q: But it was your intention that you were going to be getting with Mr. Estes.
 "[PROSECUTOR]: I'm going to object to that question as asked, if it please the Court, as far as what his intention was.
 "THE COURT: I think he's answered two or three times what his intention was."
The appellant was allowed to testify that he intended to approach Ed Estes "with this matter". Thus, the defense counsel's question was repetitive and properly excluded. 3 Wigmore, Evidence § 782(2) (Chadbourn rev. 1970).
The appellant also argues that he should have been allowed to ask Investigator Dennis Bailey, the man in charge of the investigation, about the evidence that he found which indicated guilt on the part of the appellant. The following transpired during the cross-examination of Investigator Bailey: *Page 1256 
 "Q [DEFENSE COUNSEL]: And you went before the Grand Jury?
"A: I did.
 "Q: Is there anything that you have found in your investigation that proves that Wally Hodges took this money?
 "[PROSECUTOR]: Now, Your Honor, we object to that. That's the point of the trial.
"THE COURT: Sustained.
 "Q [DEFENSE COUNSEL]: Is there anything you found — Well, just tell us what — tell us then what you did find that you say indicates guilt on the part of the defendant. Tell us the things that you came up with to charge this man.
 "[PROSECUTOR]: Judge, I don't believe that's a proper question.
"[DEFENSE COUNSEL]: That is a proper question.
"THE COURT: Well, the objection is sustained."
The purpose behind the appellant's question is unclear. If the appellant was seeking to determine the evidence which led Investigator Bailey to believe that he was guilty, such a question would call for speculation and possible hearsay. If the question was an attempt to determine the evidence upon which Investigator Bailey determined that there was probable cause, such a determination, after indictment, is irrelevant. "Whether a particular person is indicted for an offense is a matter addressed to a grand jury." Allen v. State,380 So.2d 313, 327 (Ala.Cr.App. 1979), writ denied, 380 So.2d 341 (Ala. 1980).
 "The structure of the grand jury provides assurance that investigations will be carried out free from political pressures. The capacity of a grand jury to take an investigation wherever it may lead serves to counteract suspicions of corruption and partisanship in criminal law enforcement. The grand jury therefore has the capacity not only to ferret out hidden crimes, but to relieve public concern generated by false rumors." 1 LaFave and Israel, Criminal Procedure, § 8.6(19-).
If defense counsel's question was intended to elicit testimony concerning the lack of direct proof, it is a well-established rule that circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused. Casey v. State, 401 So.2d 330
(Ala.Cr.App. 1981). Thus, in any case, the trial court properly sustained the objection.
The appellant argues that he should have been allowed to show that his furniture had been repossessed. During the direct examination of the appellant, the following transpired:
 "Q [DEFENSE COUNSEL]: Do you still have this furniture?
"A: No, sir.
"Q: What happened to the furniture?
 "[PROSECUTOR]: Object to it. It's irrelevant and immaterial.
"THE COURT: Sustained. Next question.
"[DEFENSE COUNSEL]: May we approach the bench?
"THE COURT: Certainly. Come up.
 (Discussion was had off the record between the Court and Counsel at the bench.)
 (The following discussion was had at the bench, out of the hearing of the Jury:)
 "THE COURT: For the record, the defendant offers to show by this witness that his furniture was returned to the furniture company because he could not or did not make his payments for it.
"[PROSECUTOR]: It was repossessed. Yes.
 "[DEFENSE COUNSEL]: It was repossessed. "THE COURT: The State's objection is sustained."
The appellant was then allowed to testify that during the period until January 21, 1987, he did not make a payment on the furniture.
The fact that the furniture was repossessed was irrelevant and immaterial. The determination of the admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed absent a clear showing of an abuse of discretion. Mitchell v. State, 473 So.2d 591 *Page 1257 
(Ala.Cr.App. 1985). We find no such abuse in the instant case.
Last, the appellant argues that he should have been allowed to show that he had been paying on a $10,000 note that Ed Estes had co-signed on the appellant's purchase of the store. The appellant maintains that the State was allowed to show that he had "an evil intent," by proving that he purchased a television and stereo equipment during the period of November 1986-January 1987. However, the fact that the appellant had been paying on the note is both irrelevant and immaterial to the instant theft charge. The trial court properly sustained the State's objection. C. Gamble, McElroy's Alabama Evidence (3d Ed. 1977), § 21.01(6).
 III
The appellant argues that he should have been allowed to cross-examine a State's witness concerning a pay raise which the witness had received from Ed Estes two weeks prior to trial, in order to show bias. Barron Sims testified as a rebuttal witness for the State that he was employed by Estes Oil Company at the time of trial and that he had been employed by Estes Oil Company at the time of the offense. Barron Sims testified that he never had his own key to the safe, but that he had used the appellant's key to the safe on two occasions, — when the appellant was in the hospital and when he was out of town. The appellant had previously testified that Barron Sims had his own key to the safe. Barron Sims further testified that, on one occasion, he had tried to put the deposit from his shift into the safe, but that "it wouldn't go." He said he therefore telephoned the appellant and the appellant instructed him to lock the deposit in the trunk of his car and bring it back to the service station early the next morning. The appellant had testified that Barron Sims had kept a deposit in his car trunk.
On cross-examination, defense counsel questioned Barron Sims concerning his family's income, the cost of his trailer payments, the cost of jewelry which he purchased for his wife, and whether he ever took items from the store without paying for them. It was also elicited that he had been interested in purchasing a Texaco market and that he had taken the appellant's position when he left.
The scope of cross-examination is within the discretion of the trial court and is not reversible on appeal in the absence of prejudicial abuse. Ashurst v. State, 462 So.2d 999
(Ala.Cr.App. 1984). Cross-examination may properly be limited if questions are repetitive, irrelevant, collateral, or immaterial. Id. "The usual discretion vested in the trial court to control the extent of cross-examination is narrowed in proportion to the extent of the adverseness of the testimony of the witness and the value to the defendant of a disaccreditation of the witness." Hendrick v. State,368 So.2d 576, 578 (Ala.Cr.App.), cert. denied, 368 So.2d 579 (Ala. 1979). See also Ex parte Jenkins, 474 So.2d 140, 141 (Ala. 1985). Barron Sims's testimony clearly rebutted the appellant only as to whether Sims also possessed a key to the safe. Evidence had already established that J.T. also possessed a key to the safe and Barron Sims testified that he had access to a key when he had used the appellant's key on two occasions. The extent of the adverseness of this testimony did not cause the trial court's limiting of the cross-examination to be an abuse of discretion. Furthermore, Barron Sims testified that he was employed by Ed Estes and took the appellant's job when he left and, thus, his bias was already established.
 IV
The appellant argues that the trial court erred in refusing to allow him to impeach a State's witness. The appellant argues that he should have been allowed to impeach the testimony of Ed Estes by questioning the appellant's stepfather concerning a meeting which took place between Ed Estes, the appellant's stepfather, and the appellant. Ed Estes testified that the appellant and his stepfather had met with him approximately two days following the discovery of the offense and that the stepfather was concerned and wanted to know what had happened. Ed Estes further *Page 1258 
testified that he attempted to work out an arrangement whereby the deposits could be repaid, but that the appellant "became belligerent" and the meeting ended.
Subsequently during the trial, defense counsel called the appellant's stepfather to the stand. The stepfather testified that Ed Estes gave them a list of what was missing and that neither the appellant nor he became belligerent during the meeting. Defense counsel initially asked the appellant's stepfather what Ed Estes said to them during the meeting. The prosecutor objected on the grounds of hearsay and the trial court sustained. The stepfather then testified that he and appellant returned to Ed Estes's office the following day and that, again, the appellant did not become belligerent. Thereafter, the following occurred:
 "Q [DEFENSE COUNSEL]: I'll ask — ask you if Mr. Ed Estes at that time wanted you to pay him Fifty Thousand Dollars ($50,000) —
"[PROSECUTOR]: I'm going to object —
"THE COURT: Sustained.
 "[PROSECUTOR]: — To this, if it please the Court.
"THE COURT: And, ladies and gentlemen —
"[PROSECUTOR]: [DEFENSE COUNSEL] knows —
 "THE COURT: Ladies and gentlemen, again, I have made the ruling in front of [defense counsel] and in front of the District Attorney, and they know that an offer of settlement in a case of this nature is not admissible. And I instruct you, again, you are not to give any weight or credence to that."
The appellant was allowed to elicit testimony from the appellant's stepfather concerning the meeting and, specifically, that contrary to Ed Estes's testimony, the appellant did not become belligerent. The trial court properly disallowed the question about the offered settlement. SeeLankford v. State, 396 So.2d 1099 (Ala.Cr.App. 1981). See also C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 188.04(1).
 V
The appellant argues that the trial court erred in failing to grant his motion for new trial due to juror misconduct which, he says, violated his rights to due process and an impartial trial. The record indicates that, following the close of evidence but prior to jury deliberations, one of the jurors went to the Quick Mart of the Cox Creek Station and observed the safe that was mentioned in the testimony and that appeared in some of the photographs admitted into evidence. When asked if he related his observations to the other jurors, the juror stated:
 "I said that I went by to get cigarettes and gas and I casually looked at the safe, just to see if it was like the pictures that we had as evidence, I guess. I don't know why I looked at it, but I did."
He also testified, concerning his statement to the jurors during deliberations: "Pictures were laying on the table, and I just — I said, 'I saw the safe.' And that's all that — I casually said it." He added that there was no discussion or deliberation among the jurors about his personal observation. The juror further testified that he normally did business at that station and that he did not go for the specific purpose of "checking it out." He testified that he did not take any kind of measurement of the safe or inquire about its location or how it operated. He also stated that his observation of the safe did not affect his determination of guilt in any way.
In denying the appellant's motion for new trial, the trial court made the following findings:
 "Therefore, the Court makes the specific finding of fact from the evidence that [the juror] glanced at the safe while buying cigarettes and gas. The Court further specifically finds that [the juror] received no information about the safe which could not have been gained from the State's Exhibits 14, 15 and 16 [photographs]. The Court further specifically finds that, as [the juror] stated under oath, the fact that he looked at the safe did not affect him in any way in his deliberations. No evidence was presented *Page 1259 
that gives any indication that any juror was in any way affected by [the juror's] actions, and therefore, the Court specifically finds from the evidence presented at this hearing that there is no evidence to support any theory that the jury was influenced by any of [the juror's] actions."
"Each case of alleged improper conduct must be judged by its own particular facts." White v. State, 380 So.2d 348, 351
(Ala.Cr.App. 1980). The test of determining whether juror misconduct requires reversal is whether that misconduct might have influenced the juror and the verdict. Ex parte Lasley,505 So.2d 1263, 1264 (Ala. 1987); Ex parte Troha, 462 So.2d 953,954 (Ala. 1984). "While a juror's consideration of any extraneous matter is strongly condemned, in view of the juror's own testimony we do not see how the defendant could have been prejudiced by [his] actions." White v. State, 380 So.2d 348,351 (Ala.Cr.App. 1980) (citations omitted).
 VI
The appellant argues that his right to a fair trial was violated by the cumulative effect of prejudicial remarks made by the prosecutor during his closing argument. The record does not contain any of the alleged improper comments made by the prosecutor. Each instance begins with defense counsel's objection and ends with the trial court's ruling. In each case, defense counsel states the general reason for his objection or the general nature of the comment made by the prosecutor and, in each instance, the trial judge fully explains his reasons for overruling defense counsel's objections. There is no error apparent on the face of the record.
 " 'When there is no showing to the contrary, the presumption is always in favor of correct action on the part of the trial judge.' Ballard v. State, 236 Ala. 541, 542, 184 So. 260, 261 (1938). 'It is also the well established rule that doubtful recitals must be construed most strongly against the exceptor. . . . Appellant has the burden of showing reversible error, and error must affirmatively appear.' Id. 'Substantial error is not presumed, but the burden is upon the appellant to show error.' Edwards v. State, 274 Ala. 569, 570, 150 So.2d 710, 711 (1963). 'A reviewing court cannot predicate error on matters not shown by the record. Indeed, a silent record supports a judgment. It is the appellant's duty to file a correct record.' Robinson v. State, 444 So.2d 884, 885 (Ala. 1983) (citations omitted)."
Reeves v. State, 530 So.2d 894, 897 (Ala.Cr.App. 1988).
 VII
The appellant argues that the trial court erred in failing to allow him to question J.T. concerning thefts from the store which occurred after the appellant no longer worked there. The prosecutor objected to this question on the grounds that it was irrelevant and immaterial; the trial court sustained the objection. Following a discussion off the record and outside the presence of the jury, between counsel and trial court, the defense counsel was allowed to ask the witness, off the record, whether there were any shortages from the store after the appellant left. The witness responded that he could not recall any shortage during the two week period after the appellant had left but that six or seven months later, approximately $300 was determined to be missing from the change dispenser in the safe. He also testified to a small shortage of cigarettes, no more than 50 cartons, over a period of approximately a week after the appellant left. The trial court again sustained the State's objection and defense counsel was not allowed to elicit this testimony before the jury.
The trial court did not abuse its discretion by failing to allow defense counsel to question the witness concerning thefts which occurred after the offense in question, where there were no money shortages for approximately six months and where those thefts that did occur were from the change dispenser in the safe, thefts than in the form of missing deposits. The shortage of money six months later does not make any fact more or less probable than it *Page 1260 
would be without that evidence; nor would it have tended to influence the jury because of its logical connection with the theory that someone else was responsible for the money shortages. Dawkins v. State, 455 So.2d 220, 221-222. SeeWilliams v. State, 540 So.2d 793 (Ala.Cr.App. 1988) (wherein evidence that the defendant's companion in a possession-of-forged-instrument case had stolen other checks was held to be irrelevant and inadmissible).
 VIII
The appellant argues that he should have been allowed to impeach J.T. on the issue of whether he took the money from the cash register at the service station. The record indicates that J.T. testified that he never took any cash from the cash register or the deposit bags at the service station. Subsequently, the appellant called Tom McCluskey, who had worked at the service station, and attempted to ask him whether J.T. ever took any money from the cash register. The prosecutor objected to the question on the grounds that no time frame was given for defense counsel's question. The trial judge responded that he would allow the question if it concerned the time period around the offense. The witness responded that, during that time period, he was merely "filling in" and could not remember whether J.T. had taken any money from the register during that time. Defense counsel then made an offer of proof outside the hearing of the jury that the witness had seen J.T. take money from the register prior to the time that the appellant purchased the market section of the service station. The trial court sustained the prosecutor's objection that the testimony was irrelevant and immaterial.
Whether J.T. took money from the service station before the date in question has no probative value for determining the guilt or innocence of the appellant in this case and was both irrelevant and immaterial. Williams v. State, supra; Blair v.State, 549 So.2d 112 (Ala.Cr.App. 1988), cert. denied,549 So.2d 114 (Ala. 1988). It is impermissible to impeach a witness on an immaterial matter. C. Gamble, McElroy's Alabama Evidence
§ 156.01 et seq. (3d ed. 1977); Ashurst v. State,462 So.2d 999, 1011-12 (Ala.Cr.App. 1984).
 IX
The appellant argues that his constitutional rights to due process and a fair and impartial trial were violated because, he says, he was singled out for prosecution to the exclusion of others. Specifically, he argues that Investigator Bailey singled him out as a suspect and based his entire investigation on him. However, Investigator Bailey testified that he investigated other persons; that he interviewed several people; and that he checked all of the employees' bank records. He also stated that he was never told to investigate the appellant to the exclusion of everyone else. He further testified that he did not feel that the fact that the appellant voluntarily came in for an interview indicated that he was guilty. Furthermore, he testified that he called in every employee from the service station. The appellant has provided no evidence that he was singled out for prosecution. There is no evidence that the appellant was denied his rights to due process or to a fair and impartial trial. Cf. Lofton v. State, 515 So.2d 137
(Ala.Cr.App. 1987) (defendant failed to prove that he was a victim of selective prosecution).
AFFIRMED.
All Judges concur.