The appellant, William Walter Mosley, was charged in a two-count indictment with sodomy in the first degree, in violation of § 13A-6-63, Code of Alabama 1975, and with *Page 1300 
sexual abuse in the first degree, in violation of §13A-6-66, Code of Alabama 1975. After a jury found the appellant guilty as charged in the indictment, the appellant was sentenced to 20 years' imprisonment for the conviction of sodomy in the first degree and to 10 years' imprisonment for the conviction of sexual abuse in the first degree.
The facts adduced at trial tend to establish the following. The appellant is the biological father of a boy, S.M., who was 7 years old at the time of trial, and a girl, D.M., who was 11 years old at the time of trial. E.M., the mother of the children, testified that she obtained a divorce from the appellant after she discovered he had an affair with another man. She testified that she subsequently remarried. She stated, however, that she allowed the appellant to visit his children anytime he wanted to do so.
E.M. further testified that she first learned that S.M. had been sexually abused when she received a letter from the Department of Human Resources ("D.H.R."). E.M. stated that when she contacted D.H.R. she was informed that there was concern that her son had been sexually abused by his father.
Ruth Cullins, a social worker with D.H.R., testified that D.H.R. was contacted by an official at S.M.'s school regarding the possible sexual abuse of S.M. Cullins stated that she contacted S.M.'s mother, who told Cullins that S.M. had told her of the alleged incident constituting sexual abuse. Cullins testified that she interviewed S.M. before closed circuit television, which was observed by members of the district attorney's office and law enforcement officers. Cullins stated that during the interview S.M. was shy but that he recalled the incident in detail and was able to answer her questions. According to Cullins, S.M. told her that the appellant retrieved him and his sister from school on the Friday before spring break in 1991, and took them to their paternal grandmother's house. Cullins stated that S.M. asked to sleep with his sister and his cousins while at the house, but that his father made S.M. sleep with him. Cullins stated that S.M. told her during the interview that "Daddy teached me to suck dingy and suck butt." Cullins testified that S.M. pointed to the penis of an anatomically correct doll to explain what the word "dingy" meant. Cullins further stated that S.M. placed the male doll's penis against the buttocks of another male doll to demonstrate what had happened to him. Cullins stated that S.M. showed sexual knowledge more advanced than a five year old should have. Donna Crow, a licensed professional counselor who works primarily with children, testified that she had had six one-hour sessions with S.M. Crow stated that S.M. told her that his father taught him how to have oral sex, which he called "suck dick" and that his father made him sleep in a room separate from the other children.
S.M.'s sister, D.M., testified that she and S.M. visited their father during the week of spring break in 1991. She testified that she slept in a room with her cousins and that S.M. slept in a room with the appellant. She also stated that S.M. told her that the appellant had sexually abused him. She testified that she calls the appellant "J.R." She further stated that J.R. looked different on the day of trial from when she and S.M. visited him during spring break because at that time he had bleached blond hair.
S.M. testified that he calls his biological father "J.R." When he was asked whether he could identify the appellant as his biological father, he could not. He could not locate J.R. in the courtroom. He stated that it had been a long time since he had seen his father and that he recalled seeing his biological father only one time. He testified that J.R. had taken him to J.R.'s mother's house and that all the girls and boys slept in a room except him because he had to sleep with J.R. S.M. testified that when he had to sleep with J.R., J.R. "[p]ut his dingy up against my butt real hard and it hurt. And he put his mouth on my dingy." He stated that J.R. was the person who hurt him.
The appellant's father testified that he was in the house on the night that the alleged incident occurred. He stated there were no doors to the rooms where the children slept and that he did not notice anything unusual occur. He further testified that S.M.'s cousin, C.J., slept in the same room with S.M. and the appellant. *Page 1301 
The appellant's mother testified that the appellant had trouble getting visitation with his children because, she said, his ex-wife would not permit visitation at times and that the appellant had to get a court order to visit with the children during the weekend that S.M. stated he was sexually abused. She stated that she was in charge of the sleeping arrangements on the night that the incident occurred and that C.J. slept in the room with S.M. and the appellant.
The appellant's sister-in-law testified that she had baby-sat for S.M. and D.M. before their spring break in 1991. She stated that on one occasion she overheard S.M. tell her daughter that he would tell her a story if she would perform oral sex on him. She further stated that she questioned S.M. about this remark and that S.M. said he learned about that act while he was in Florida with his mother.
C.J., S.M.'s cousin, who was nine years old at the time of the trial, testified that he slept with the appellant and S.M. on the night that the sexual abuse allegedly occurred. He testified that he never awoke during the night and that he did not notice anything odd occur during the night. During cross-examination C.J. acknowledged that the defense attorney told him to say that he slept with the appellant that night. During redirect examination C.J. testified that he said he slept in the same bed with the appellant because it was the truth and not because someone told him to say it.
The appellant testified that he and his ex-wife had divorced because they argued and because he had hit her. He stated that he had trouble trying to arrange visitation with his children because his ex-wife moved households and would not give him a correct address for her and the children. The appellant denied that he sexually abused S.M.
 I
The appellant first argues that the trial court erred in admitting the out-of-court statement that S.M. gave to Cullins. The appellant contends that the State did not comply with §15-25-35, Code of Alabama 1975, because, he says, the State did not provide the defense with notice of its intent to use the statement during the trial.
Section 15-25-35, Code of Alabama 1975, part of the Child Sexual Abuse Victim Protection Act of 1989, § 15-25-30 et seq., provides: "the proponent of [a child's out-of-court] statement must inform the adverse party of the opponent's intention to use the statement and the content of the statement sufficiently in advance of the proceeding to provide the defendant with fair opportunity to prepare a response to the statement. . . ."
According to the record, a deputy sheriff observed the interview between Cullins and S.M. and took notes as to what occurred. These notes were transcribed and provided to the defense several weeks before the trial. Additionally, the record indicates that the defense presented a motion in limine to suppress the admission of the out-of-court statement. InFortner v. State, 582 So.2d 581, 586 (Ala.Crim.App. 1990), cert. denied, 582 So.2d 587 (Ala. 1991), this Court held that where it appeared "that defense counsel was sufficiently prepared to oppose the admission of the statements, and because counsel did, in fact, file a written motion to suppress the statements before they were introduced into evidence," the defendant had adequate notice of the State's intention to use the statement. In this case, the appellant had notice of the substance of the statement in advance of his trial because a transcript of S.M.'s interview was provided to him. We find his argument that he was not aware of the State's intention to use the statements to be without merit. The substance of the statements were provided to the appellant because the State, indeed, intended to use them at the trial.
Additionally, S.M. testified at the trial. Section15-25-32(1), Code of Alabama 1975, provides that an out-of-court statement of a child may be admitted pursuant to the Child Sexual Abuse Victim Protection Act if the child testifies at the proceeding and is subject to cross-examination about the out-of-court statement. See also Edwards v.State, 612 So.2d 1282, 1283 (Ala.Crim.App. 1992).
Therefore, testimony concerning the statement made by S.M. to Cullins was admissible because the appellant had adequate notice of the substance of the statement and *Page 1302 
because S.M. testified and was subject to cross-examination concerning the statement.
 II
The appellant next argues that the trial court erred in denying his motion for a judgment of acquittal because S.M. could not identify him in the courtroom as J.R., and, therefore, he argues, the State failed to produce sufficient evidence to submit the case to the jury. We disagree.
When presented with the issue whether there was sufficient evidence to submit a case to a jury, this Court must accept as true the evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution.Morgan v. State, 589 So.2d 1315 (Ala.Crim.App. 1991); Benton v. State, 536 So.2d 162, 165
(Ala.Crim.App. 1988); Griffin v. State, 393 So.2d 523, 526
(Ala.Crim.App. 1981).
S.M. testified that J.R. was his biological father and clearly testified that J.R. was the person who had hurt him. The child recalled seeing his biological father on only one occasion. Also, D.M., S.M.'s older sister, testified that the appellant was, in fact, J.R. and that J.R. had changed his appearance since the abuse occurred.
S.M.'s testimony concerning J.R.'s abuse was specific and sufficiently detailed. The testimony from other witnesses corroborated S.M.'s testimony by establishing the appellant was, in fact, J.R., who S.M. stated had abused him. Therefore, sufficient evidence of identification was presented by the prosecution to submit the case to jury.
 III
The appellant contends that the trial judge erred by sustaining the prosecution's objection to a defense witness's testimony. The appellant's sister-in-law, Alice Mosley, was presented as a defense witness and during direct examination defense counsel asked Mosley a question about a statement S.M.'s mother had made to her. The prosecutor objected on the basis that the question called for hearsay. The judge sustained the objection. Defense counsel made no offer of proof as to what the witness's response would provide by way of legal evidence. Where a question, on its face, calls for inadmissible testimony, without an offer of proof as to what the witness's expected response would be, the trial court does not err in sustaining an objection to the question. Landreth v.State, 600 So.2d 440, 446 (Ala.Crim.App. 1992); C. Gamble, McElroy's Alabama Evidence § 425.01(5), (8) (4th ed. 1991).
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.