The appellant, Anthony Darryl Knight, was convicted of sexual abuse in the first degree, a violation of § 13A-6-66(a)(3),Code of Alabama 1975 and was sentenced to 5 years' imprisonment. That sentence was split, and the appellant was ordered to serve 18 months followed by 5 years' probation.
 I.
Knight first claims that the trial court erred in allowing the state to introduce out-of-court statements made by the victim, S.B.,[1] to her mother and grandmother. The state offered these statements pursuant to the Child Physical and Sexual Abuse Victim Protection Act, § 15-25-30, et seq., Code ofAlabama 1975. Following a hearing on Knight's motion to suppress those statements, the trial court ruled that S.B. was "unavailable to testify" under § 15-25-32(2)a. 5., Code ofAlabama 1975, because she was completely unable to communicate in a courtroom setting, and that, therefore, it would decide the admissibility of the out-of-court statements as each one was offered by the state, subject to objection by Knight.
The state offered testimony from S.B.'s grandmother about statements S.B. made to her. Knight objected to this testimony on the grounds that he had not been properly informed of the contents of the statements and that the trial court did not, prior to trial, determine the trustworthiness of the statements, taking into consideration the factors set out in § 15-25-37, Code of Alabama 1975. The trial court overruled Knight's objections. (R. 86-88.) Our examination of the record reveals that Knight's objection was not made until after S.B.'s grandmother, in response to questions from the state, had related to the jury what S.B. had told her about the alleged sexual contact by Knight. (R. 87-88.) An objection that is made after an answer is given is not timely, absent a motion to exclude the testimony and an adverse ruling on the motion.Thomas v. State, 440 So.2d 1216, 1218 (Ala.Cr.App. 1983). Therefore, the issue of the trustworthiness of the statements is not preserved for our review. Roper v. State, 695 So.2d 244
(Ala.Cr.App. 1996), cert. denied, 695 So.2d 249 (Ala. 1997); see also C. Gamble, McElroy's Alabama Evidence, § 426.01(3) (5th ed. 1996).
Even assuming, arguendo, that this issue were properly preserved, it is without merit. By overruling Knight's trustworthiness objection, the trial court made its determination after considering the factors listed in §15-25-37, and the record confirms that this determination was supported by several of those factors.
Knight's objection to the lack of proper notice as to the contents of the statements is properly before us. The record establishes, however, that Knight acknowledged he had received notice of which out-of-court statements were to be offered. (R. 24.) Finally, the trial court sustained Knight's objection to the testimony about a statement made by S.B. at a family meeting after her disclosure of the sexual abuse to her mother and grandmother. (R.89-90.) We find no error here.
 II.
The appellant also argues that the trial court erred because, he says, it allowed the *Page 513 
state to elicit testimony regarding a collateral act and further, because the trial court denied his motion for a mistrial, which he made based on this testimony. The appellant had filed a pre-trial motion in limine (C. 53-54), that sought to prevent any mention of a 1994 Department of Human Resources ("DHR") investigation of alleged sexual abuse of a seven-year old cousin, A.K., by the appellant. (C. 63-69.) The state initially indicated that it did not intend to introduce this evidence, and the appellant's motion was granted. Later, during direct examination, a number of defense witnesses testified that they had no knowledge that the appellant suffered from any sexual problems. (R. 188, 200, 210.) The appellant's sister was questioned about whether she knew of any unusual behavior the appellant exhibited around children. (R. 225.) Following this testimony, the state advised the trial court, out of the hearing of the jury, that it intended to question the witness concerning her knowledge of the facts underlying A.K.'s allegations. Knight objected; the trial court overruled his objection.
The record established that Knight's defense was that he did not commit the charged offense and, moreover, that he had no knowledge of how the offense occurred. The testimony elicited from defense witnesses, as indicated above, attempted to convey to the jury that the appellant was normal sexually, and that, therefore, he could not, and would not, have raped his young step daughter. This testimony opened the door to the state's offering evidence to rebut this inference. See Nail v. State,629 So.2d 772, 774-75 (Ala.Cr.App. 1993). Once the appellant put this matter at issue, the state was entitled to respond.
Whether to grant a motion for a mistrial is addressed to the sound discretion of the trial court and the trial court's decision on this matter will not be reversed on appeal absent an abuse of discretion. Hamilton v. State, 680 So.2d 987, 992
(Ala.Cr.App. 1996). No such abuse occurred in the instant case.
 III.
The appellant next contends that the trial court erred because, he says, it did not instruct the jury, as he requested, concerning the fact that S.B.'s out-of-court statements were admitted without the opportunity for cross-examination at the time they were made. § 15-25-36, Codeof Alabama 1975.
When the trial court declined to give the requested instruction, the appellant made a timely objection on the ground that the requested instruction was identical to one given by the trial court in a case where the out-of-court statements had been allowed, and that it was a correct statement of law. A defendant is "required to state with particularity the grounds of his objection to the court's refusal to give a requested charge." Miller v. State,673 So.2d 819, 820 (Ala.Cr.App. 1995). The ground that a jury instruction is a correct statement of the law is insufficient to preserve an objection to the trial court's refusal to give the instruction. Jones v. State, 665 So.2d 982, 985
(Ala.Cr.App. 1995). Thus, this argument must fail.
 IV.
The appellant's fourth contention is that the trial court erred in denying his motion for a new trial; that motion was based on alleged juror misconduct.
 "The granting or denying of a motion for new trial rests largely within the discretion of the trial court, and the exercise of that discretion carries with it a presumption of correctness that will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error."
Beard v. State, 661 So.2d 789, 796 (Ala.Cr.App. 1995) (citations omitted). It is under this standard that we must decide whether there is sufficient evidence to warrant reversal of the trial court's judgment in this case.
At the hearing on his motion for a new trial, the appellant offered the testimony of Dr. R.F. Dr. F., a retired veterinarian, was a member of the jury that convicted the appellant. The gist of Dr. F.'s testimony was that during the appellant's trial, he independently investigated the susceptibility of young female children to accidental infection of gonorrhea, then shared his findings with the other jurors. (Supp. R. 16-25.) The *Page 514 
appellant raised the issue of such an accidental infection during his cross-examination of the state's expert medical witnesses. The relevant portion of Dr. F.'s testimony is set out below:
 "Q [by Mr. Vallas, the defense attorney]: Okay. And after the first day of trial, did you go back and read certain books at your house?
"A: Yes. I checked the references I had.
 "Q: Okay. And that included this issue concerning the gonorrhea and how the child could have contracted gonorrhea?
"A: Yes.
". . . .
 "Q: Okay. What books did you go back to your house and read?
 "A: Well, I have some medical microbiology books from my work with public health issues and seafood, just medical microbiology books that were used in medical school for microbiology courses.
 "Q: And besides that, did you also call some people that you knew and ask them some questions about that issue?
 "A: I made an attempt to track down someone who was familiar with this — the epidemiology or the spread of this disease.
"Q: Okay. Who was that?
 "A: Well, I called the head pathologist of the USDA who is a personal friend and is a veterinarian and concerned with public health issues. He's not an expert on infectious diseases or sexually transmitted diseases of humans, but he is very much aware of public health issues and the specific causes. He was unable to give me any feel for that and mentioned a fellow in the CDC that I had met who is in the infectious disease department, and a microbiologist, head of the microbiology department in the CDC is a man that I had worked with on the phone in establishing some criteria for Vibrio, the oyster-born[e] disease that has killed several people.
". . . .
 "Q: Did you not tell me during that same conversation we had that you relayed that information back to the other jurors during the deliberations?
"A: Yes, I did.
"Q: During the deliberation, okay.
 "A: Why don't you just ask me to tell him [the judge] what I told you?
 "Q: Okay. Why don't you tell him what you told me?
 "A: I confirmed to him [Mr. Vallas] his data that he had found in the book in the library that the pre-pubertal female, the infant child, female is especially susceptible to gonorrhea by accidental contamination, and I thought it interesting that a fellow who is a pediatrician — this is what I told him — pediatrician was not very much aware of that.
 "All your text that you read in nursing and in medical treatment of adults never mentions accidental infection. But when you get in the public health area, there is a body of evidence that they're fairly susceptible to it.
 "THE COURT: Is that what you related to Mr. Vallas?
"THE WITNESS: That's what I related to him.
"THE COURT: To Mr. Vallas?
"THE WITNESS: Yes.
 "A: However, I also related that ordinary sanitary procedures that you follow in a household would be sufficient. You'd have to have clean towels, clean wash rags, not a whole lot of contact intimate, say, with underwear and that sort of thing, that ordinary household sanitation would prevent that. And what I said was merely by way of discourse. I didn't anticipate that I'd be up here doing this.
". . . .
 "Q: Did you say anything to me about that [the probability of accidental infection of a young female]?
 "A: The only thing I said was that there were cases where there have been a spread, an outbreak of the disease in an institution where young females are present because of the possibility of accidental — I gave no figure, and I know of no figure for the percentage. It's just a fact that the young female is susceptible. *Page 515 
 "MR. VALLAS: Judge, I don't have any more questions of him.
". . . .
 "Q [by Mr. Hardesty, the prosecutor]: Dr. Fields, did the jury rely on the research that you had just mentioned to Mr. Vallas in reaching a decision or did the jury rely on the evidence from the witness stand and the Court's instructions in reaching its decision?
 "A: I was very refreshed by the fact that they took everything into consideration. And given the level of education of the crowd, I was really amazed that they grasped all the concepts and remembered all the arguments, and they didn't give any particular weight to what I had to say.
 "Q: Did the jurors believe the Defendant guilty of the crime that you all found him guilty of?
"A: Absolutely.
 "Q: And lastly, have you told me outside earlier today that this was more or less an intellectual exercise that you were pursuing on your own and not as an influence on the jurors themselves as we talked outside?
 "A: I did tell them what I had found, and in all fairness I thought they ought to know that.
". . . .
 "MR. VALLAS: Judge, the only reason I bring that issue up is because of the standard that I read in doing some research on this is the issue is not whether the exposure has [im]properly influenced any member of the jury, but whether it might have unduly affected any juror to act outside [the] evidence in arriving at a verdict.
 "THE COURT: Well, tell me how it was detrimental to your client.
 "MR. VALLAS: Well, Judge, I don't really know how. I mean, if he's relaying outside information — and I think one of the things would have been the probability of this innocent contact causing gonorrhea, which, apparently, he did indicate that there was some information he provided to the jurors concerning that.
 "THE COURT: Well, my recollection of the testimony was that the experts testified it was highly unlikely that innocent contact would result in transmittal of gonorrhea. Isn't that what you remember?
 "MR. VALLAS: I think Dr. Shriner said that. I don't think the other doctor that testified said that.
 "THE COURT: I can't see where this juror's information and his disclosure of that information to the jury is in any way detrimental to your client. In fact, it is favorable to your client.
 "MR. VALLAS: Well, it seemed like — it does seem that way from what he's relaying today, but, I mean, the problem is, you know, going back a month, you know, I don't know exactly what information he provided to them about this and how it might have influenced their decision. That was the reason why I brought it up.
"THE COURT: All right. What else you got?"
(Supp. R. 17-18, 20-22, 24-27.) (Emphasis added.)
The appellant cites Roan v. State, 225 Ala. 428, 143 So. 454
(1932), and Ex parte Lasley, 505 So.2d 1263 (Ala. 1987), in support of his argument that because the information provided to other jurors by this juror "might have unlawfully influenced [the jury's] verdict," 225 Ala. at 435, 143 So. at 460, 505 So.2d at 1264, the trial court should have granted his motion for a new trial.
There is no question that Dr. F.'s actions constitute juror misconduct. Jurors should not conduct independent investigations into any issue that arises during the trial of a case. Thus, the question becomes whether Dr. F.'s conduct warrants reversal of the trial court's denial of the appellant's motion for a new trial.
Alabama law has long held that not every instance of juror misconduct warrants reversal. Because a determination of which juror misconduct warrants a new trial is a highly subjective one, each instance must be decided on a case-by-case basis. For example, in Reed v. State, 547 So.2d 594 (Ala.Cr.App. 1988), this Court determined that the trial court committed reversible error in denying *Page 516 
a motion for a new trial based on juror misconduct. InReed, a juror conducted a home experiment to resolve a factual issue of the case, but did not share the results of his experiment with rest of the jury until after the jury had rendered its verdict. The Alabama Supreme Court disagreed and reversed this Court's judgment, concluding that "[b]ecause the defendant in this case has failed to show that the experiment resulted in the introduction of facts that might have unlawfully influenced the verdict rendered, we find that the juror's action does not warrant a new trial." Reed v. State,547 So.2d 596, 598 (Ala. 1989). In addressing the issue of juror misconduct, the Supreme Court went on to note:
 "A juror's conducting an experiment outside the presence of the court constitutes juror misconduct because it inherently results in the introduction of facts, whether consistent or inconsistent with the evidence already before the jury, that have not been subject to the rules of evidence or to cross-examination by either party. See Ex parte Lasley, 505 So.2d 1263, 1264 (Ala. 1987). However, not every instance of juror misconduct warrants a new trial. Id. Each case involving juror misconduct must be judged by its own peculiar facts, and the conduct, when found to be prejudicial, will require a reversal. Bell v. State, 227 Ala. 254, 256, 149 So. 687, 689 (1933).
 "The test for determining whether juror misconduct is prejudicial to the defendant and, thus, warrants a new trial is whether the misconduct might have unlawfully influenced the verdict rendered. Ex parte Troha, 462 So.2d 953, 954 (Ala. 1984); Roan [v. State] 225 Ala. 428, 435, 143 So. 454, 460 (1932); Leith [v. State] 206 Ala. 439, 443, 90 So. 687, 690 (1921). Once the trial court investigates the misconduct and finds, based on competent evidence, the alleged prejudice to be lacking, this Court will not reverse. See Bascom v. State, 344 So.2d 218, 222
(Ala.Crim.App. 1977)."
Reed v. State, 547 So.2d at 597. (Emphasis added.)
Although the evidence in this case was circumstantial, it tended to establish that S.B. had been diagnosed as having gonorrhea during a time frame when Knight was being treated for the same disease. Moreover, S.B. told her mother, grandmother, and others that Knight had "messed with her pee-pee [her vagina]" (R. 87). A further medical examination revealed that S.B.'s vagina showed signs of a penetrating injury. Likewise, there were a number of occasions when Knight was alone with S.B., providing him with the opportunity for unlawful sexual contact with her. Finally, there was evidence that Knight had altered documents from the Department of Public Health. These documents, which showed the results of his blood tests for sexually transmitted disease, had been changed to indicate that he did not have gonorrhea when, in fact, he was infected with the disease.
How S.B. contracted gonorrhea was in dispute. Knight's theory was that S.B. contracted the disease by rubbing her genital area with towels or rags that he and the child's mother had used to clean themselves after they had engaged in sexual intercourse. The state, through its evidence, attempted to show that it was extremely unlikely that S.B. could have been accidentally infected by contact with a contaminated towel or rag. Thus, the state's theory was that the only plausible explanation for S.B.'s infection was that she had had sexual contact with the appellant.
The appellant's theory of the cause of the victim's infection was the subject of Dr. F.'s independent investigation. Furthermore, his investigative work tended to support the appellant's theory that the child had contracted gonorrhea by contact with a contaminated towel. Despite the fact that the extraneous information provided to the jury by Dr. F. supported Knight's theory, there was no evidence that the information had any effect on the jury's verdict. Indeed, Dr. F. affirmatively stated that the other jurors gave no special weight to the information he furnished. Moreover, the jury unanimously believed that Knight was guilty of the offense of which he was convicted. No other jurors were called to testify. No other evidence was presented concerning the effect of Dr. F.'s findings on the jury's verdict. Quite simply, the appellant has failed to present any evidence to support his contention that *Page 517 
he was, in any way, prejudiced by the experiment and the subsequent extraneous information. From everything we have seen, Dr. F.'s independent investigation tended to bolster the appellant's theory of defense, rather than prejudice it.
 " 'Juror misconduct will justify a new trial when it indicates bias or corruption, or when the misconduct affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law.' Whitten v. Allstate Ins. Co., 447 So.2d 655, 658 (Ala. 1984). As a general rule, '[w]here extraneous material [is] introduced into the jury's deliberations, . . . actual prejudice [must] be shown to work a reversal of the verdict.' Nichols v. Seaboard Coastline Ry., 341 So.2d 671, 672 (Ala. 1976). However, in some cases, 'the character and nature of the extraneous material . . . constitutes prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary.' Id. (prejudice presumed as a matter of law from jury's consulting encyclopedia and dictionary definitions of "negligence," "contributory negligence," "subsequent negligence," and "subsequent contributory negligence")."
Minshew v. State, 594 So.2d 703, 716 (Ala.Cr.App. 1991). We will not reverse the trial court's finding of "no prejudice" if it properly investigates the alleged misconduct and its finding is in accord with competent evidence. Baker v. State,574 So.2d 1018, 1019 (Ala.Cr.App. 1990); Reed v. State, 547 So.2d at 597.
Since the Alabama Supreme Court's decision in Reed, a number of appellate decisions have addressed juror misconduct. All have expressed the same basic principles of law regarding this issue. Some of these decisions have concluded that the juror misconduct was sufficiently prejudicial to warrant reversal of the defendant's conviction. Others have not. Our examination of these cases, however, reveals that in each of the decisions warranting reversal, the facts are sufficiently distinguishable from those in the instant case so as not to require reversal here. One critical difference, we believe, is that in those cases that warranted reversal the motion for a new trial presented evidence tending to show that the juror misconduct affected the verdict. In two cases, the appellant presented affirmative evidence in support of his motion that jurors' decisions had been influenced by the extraneous facts they learned as a result of juror misconduct. Ex parte Thomas,666 So.2d 855, 858 (Ala. 1995) (juror's affidavit stated that she had based her decision in part on the experiment); Williams v.State, 570 So.2d 884, 887 (Ala.Crim.App. 1990) (juror's affidavit and testimony admitted that misconduct had influenced her decision). One earlier Supreme Court decision appears to depart from this reasoning. In Ex parte Potter, 661 So.2d 260,262 (Ala. 1994), the Supreme Court determined that several jurors' visits to the scene of the crime affected the jury's verdict, despite testimony to the contrary. This decision, however, was subject to a strong dissent by one-third of the court. Justice Houston, dissenting, stated:
 "[W]hy is the Court of Criminal Appeals wrong in deferring to the trial court's decision as to whether the conduct of the jurors, who visited the street where the accident occurred, was so prejudicial to the defendant that it warrants a new trial? I have carefully reviewed the ore tenus
evidence of the jurors presented during the hearing on the motion for new trial. A new trial should be granted if the action of the jurors resulted in bias or corruption or otherwise affected the verdict, or if from the extraneous facts prejudice may be presumed as a matter of law. Whitten v. Allstate Insurance Co., 447 So.2d 655, 658
(Ala. 1984). The record shows no bias or corruption. The record shows that the view of the street where the car hit the pedestrian did not affect the verdict of any of the jurors. Does a juror's visit to the street, which is not the subject of conflicting evidence, require the trial court to presume prejudice as a matter of law? I think not; however, the majority holds that it does. Therefore, I respectfully dissent."
661 So.2d at 262-63. We would note, however, that the Supreme Court's subsequent decision in Ex parte Thomas, supra, determined that the juror misconduct *Page 518 
there constituted reversible error because an improper experiment conducted by jurors introduced new evidence that was crucial in resolving a key material issue. Even more recently, the Alabama Supreme Court, in Dawson v. State, 710 So.2d 472
(Ala. 1997), reversed this court's holding that juror misconduct warranted a new trial, because "no prejudice to the defendant could have resulted from the extraneous information." Dawson, 710 So.2d at 476. We note that, in reaching its decision, the Supreme Court looked to its opinion in Reed v. State, supra, the principal decision upon which this court relies in reaching our decision in this case. In the present case, the juror misconduct introduced no new evidence that would have been crucial in resolving such an issue. Nor was there any evidence that the misconduct prejudiced the appellant in any way.
We believe that the holdings in Dawson v. State and Ex parteThomas are in accord with the "harmless error" rule, as set out in Rule 45, Ala.R.App.P., under which an appellant not only must show error, but also must demonstrate that such error resulted in a substantial injury to the appellant's rights in order to warrant a reversal of his conviction. See e.g.,Kolmetz v. State, 600 So.2d 389, 391 (Ala.Crim.App. 1991),cert. denied, 600 So.2d 396 (1992).
This is the rule of law we follow here today. The appellant failed to show that Dr. F.'s conduct adversely affected the jury's verdict in his case. Moreover, as we have previously noted, Dr. F.'s findings strengthened, rather than prejudiced, the appellant's theory of defense.
 " 'While a juror's consideration of any extraneous matter is strongly condemned, in view of the juror's own testimony we do not see how the defendant could have been prejudiced by [the juror's] actions.' White v. State, 380 So.2d 348, 351 (Ala.Cr.App. 1980) (citations omitted)."
Hodges v. State, 570 So.2d 1252, 1259 (Ala.Cr.App. 1989). The trial court determined that the appellant was not prejudiced by Dr. F.'s actions. This finding is in accord with the evidence presented during the post-trial hearing. Accordingly, we cannot say that the trial court erred in denying the appellant's motion for a new trial.
 V.
The appellant's final contention is that the trial court erred because, he says, it denied him the chance to impeach the testimony of S.B.'s mother. During his case-in-chief, the trial court sustained the state's objection to a question propounded to defense witness Natasha Jones concerning a telephone conversation with the victim's mother, in an apparent attempt to impeach the mother's credibility. The state's objection was twofold: that the question called for a hearsay response and that appellant could not impeach his own witness. The trial court sustained the objection.[2]
 "At the moment an objection is sustained to a question propounded to a witness, the party asking the question should state to the court the answer expected from the witness in order for the court to determine whether or not the expected answer is admissible."
Gamble, McElroy's Alabama Evidence § 425.01(5) (5th ed. 1996). See Mosley v. State, 644 So.2d 1299, 1302 (Ala.Cr.App. 1994) (the trial court did not err in sustaining prosecutor's hearsay objection to question asked by the defendant when the defendant made no subsequent offer of proof as to the expected answer). The appellant failed to make an offer of proof. Thus, this issue is not preserved for our review. Perry v. State,568 So.2d 873, 874 (Ala.Cr.App. 1990); Rule 103(a)(2), Ala.R.Evid.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
[1] See Rule 52, Ala.R.App.P.
[2] We recognize that, contrary to the state's ground of objection here, Rule 607, Ala.R.Evid., permits impeachment of a witness by any party, including the party that called the witness. *Page 519